STRASSER & ASSOCIATES, P.C.
7 EAST RIDGEWOOD AVE.
PARAMUS, NEW JERSEY 07652
Phone: (201) 445-9001
Fax: (201) 445-1188
E-MAIL: wis@strasserlaw.com
Attorneys for Plaintiff, VNB Realty, Inc.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VNB REALTY, INC., a wholly owned subsidiary of Valley National Bank,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. BANK NATIONAL ASSOCIATION,<br><br>    Defendant. | Civ. Action No. 13-cv-04743-WJM-MF<br><br>DOCUMENT ELECTRONICALLY FILED<br><br>MOTION DATE: December 2, 2013 |

### PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT U.S. BANK NATIONAL ASSOCIATION'S MOTION TO DISMISS

William I. Strasser (WS6002)
David E. Mayland (DM1225)
STRASSER & ASSOCIATES, P.C.
7 East Ridgewood Ave.
Paramus, New Jersey 07562
Tel: 201.445.9001
Fax: 201-445-1188

Talcott J. Franklin (admitted *Pro Hac Vice*)
TALCOTT FRANKLIN P.C.
208 N. Market St., Suite 200
Dallas, TX 75202
Tel: 214.321.3838

Derek Witte (admitted *Pro Hac Vice*)
TALCOTT FRANKLIN P.C.
40 Pearl Street NW, Suite 924
Grand Rapids, MI 49503
TEL: 616.719.3106

Paul D. Snyder (#43067)
TALCOTT FRANKLIN P.C.
13401 Mission Road, Suite 207
Leawood, KS 66209
Tel: 913.948.7480
Fax: 913.440.0724
(*PRO HAC VICE* APPLICATION TO BE FILED)

TABLE OF CONTENTS

I. INTRODUCTION & PRELIMINARY STATEMENT........................................................................1

II. STANDARD OF REVIEW FOR MOTION TO DISMISS.................................................................4

III. ARGUMENT .........................................................................................................................5

   A.   The Purported "No Action" Clauses in the PSAs Do Not Bar Plaintiff's Claims. ...........5

   B.   Defendant Breached Its Duty to Avoid Conflicts of Interest, Thereby Failing to Take
      Any Action Concerning Wells Fargo's Robo-signing and Other Improper and Illegal
      Acts to the Detriment of the Certificateholders.................................................................9

      1.   Indenture trustees have an unwaivable duty to avoid conflicts of interest.................10

      2.   Plaintiff clearly alleges that robo-signing and other misconduct occurred with respect
          to the Trusts. .......................................................................................................11

      3.   Plaintiff plausibly alleges that Defendant was imputed with knowledge of robo-
          signing and other servicer misconduct. ....................................................................14

      4.   Defendant's argument that it had no duty to police servicer misconduct is also a red
          herring. ...............................................................................................................15

      5.   Plaintiff more than adequately pleads its damages. ..................................................15

      6.   Plaintiff's causes of action based on Defendant's conflict of interest are plausible
          and well-founded. ..................................................................................................18

   C.   Defendant's Arguments In Opposition to Plaintiff's Claims Regarding Representation
      and Warranty Breaches Are Unavailing...........................................................................21

      1.   Plaintiff has adequately alleged Actual Breaches of Representations & Warranties
          With Regard To The Underlying RMBS Trusts. .......................................................21

      2.   Defendant May Not Blindly Rely On The Patently False Representations And
          Warranties Made By The Master Servicer, Sellers And Others.................................23

      3.   Plaintiff Has Adequately Alleged Defendant's Actual Knowledge of the Breaches of
          Representations and Warranties, Although It Need Not Do So. ................................24

   D.   Each of Plaintiff's Counts State a Cause of Action.........................................................25

      1.   Count I: Breach of Trust Indenture Act....................................................................25

2.  Count II: Breach of the Duty of Loyalty ....................................................28

3.  Count III: Breach of Fiduciary Duty .........................................................28

4.  Count IV: Breach of Contract ...................................................................30

5.  Count V: Negligence ..................................................................................31

6.  Count VI: Injunctive Relief .......................................................................32

7.  Count VII: Breach of Implied Covenant of Good Faith and Fair Dealing................33

CONCLUSION.................................................................................................................35

TABLE OF AUTHORITIES

*Anwar v. Fairfield Greenwich, Ltd.*,
    728 F. Supp. 2d 372, 414 (S.D.N.Y. 2010)....................................................................29
*Aramjoo v. Sallie Mae Inc.*,
    No. 4:11–cv–00077–DGK, 2011 WL 3568903, *2 (W.D. Mo. Aug. 12 2011) ...............15
*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009)............................................................... 4; 12; 18; 32
*Bank of N.Y. v Tyco Int'l Grp., S.A.*,
    545 F. Supp.2d 312, 324 n.81 (S.D.N.Y. 2008).................................................................8
*Bank of N.Y. Mellon v. Walnut Place LLC*,
    819 F. Supp. 2d 354 (S.D.N.Y. 2011)..............................................................................10
*Beck v. Manufacturers Hanover Trust Co.*,
    218 A.D.2d 1, 12 (N.Y. App. Div. 1st Dep't 1995) ........................................................11
*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 555, 569-70 (2007) ...........................................................4; 5; 12; 18; 32
*BNP Paribas Mortg. Corp. v. Bank of America, N.A.*,
    778 F. Supp. 2d 375, 396-97 (2011) ....................................................................... 23; 28
*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585, 594 (8th Cir. 2009) ........................................................................... 5; 31
*Butler v. Wells Fargo Bank, N.A.*,
    No. MJG–12–2705, 2013 U.S. Dist. LEXIS 4424 (D. Md. Jan. 11, 2013) ............... 12; 13
*CFIP Master Fund, Ltd. v. Citibank, N.A.*,
    738 F. Supp. 2d 450, 477-78 (S.D.N.Y. 2010) .................................................................7
*CPS Medmanagement LLC v. Bergen Reg'l Med. Ctr., L.P.*,
    2013 U.S. Dist. LEXIS 49518, 50 n.18 (D.N.J. Apr. 4, 2013) ........................................29
*Crocker v. Manhattan Life Ins. Co.*,
    61 App. Div. 226, 230 (1st Dep't 1901) ..........................................................................33
*Cruden v. Bank of New York*,
    957 F.2d 961, 968 (2nd Cir. 1992).....................................................................................7
*Dabney* v.*Chase Nat'l Bank*,
    196 F.2d 668, 670 (2d Cir. 1952)........................................................... 8; 10; 11; 17
*Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162, 186, 187, 192 (S.D.N.Y. 2011)..................................... 7; 20; 21; 31
*Employees' Ret. Sys. of the Virgin Islands v. J.P. Morgan Chase & Co.*,
    804 F. Supp. 2d 141, 152 (S.D.N.Y. 2011)......................................................................22
*Erickson v. Pardus*,
    551 U.S. 89, 93 (2007)......................................................................................................4
*Federal Hous. Fin. Agency v. JPMorgan Chase & Co.*,
    902 F. Supp. 2d 476, 490 n.14 (S.D.N.Y. 2012)..............................................................22
*Federal Hous. Fin. Agency v. UBS Americas, Inc.*,
    858 F. Supp. 2d 306, 332 (S.D.N.Y. 2012)......................................................................22
*Fritz v. Charter Twp. of Comstock*,
    592 F.3d 718, 722 (6th Cir. 2010) ....................................................................................5
*G.D. Searle & Co. v. Medicorp Commc'ns, Inc.*,
    843 F. Supp. 895, 899 (S.D.N.Y. 1994)...........................................................................29

*Graco, Inc. v. PMC Global, Inc.*,
  2009 U.S. Dist. LEXIS 26845, 70 (D.N.J. Mar. 31, 2009)................................15
*Grund v. Del. Charter Guar. & Trust Co.*,
  788 F. Supp. 2d 226, 251-252 (S.D.N.Y. 2011) ......................................30
*Havel v Kelsey-Hayes Co.*,
  83 A.D.2d 380, 384 (4th Dep't 1981) ............................................34
*Holder v. City of Allentown*,
  987 F.2d 188, 194 (3d Cir. 1993).................................................5
*Howe v. Bank of N.Y. Mellon*,
  783 F. Supp. 2d 466, 473 (S.D.N.Y. 2011)....................................6; 11
*In re Bankers Trust Co.*,
  450 F.3d 121, 129 (2d Cir. 2006).................................................8
*In re E.F. Hutton Southwest Properties II, Ltd.*,
  953 F.2d 963, 972 (5th Cir. Tex. 1992) .........................................20
*In re Gulf Oil/Cities Service Tender Offer Litig.*,
  725 F. Supp. 712, 737 n.9 (S.D.N.Y. 1989).....................................25
*Jones v. Cincinnati*,
  521 F.3d 555, 559 (6th Cir. 2008) ...............................................32
*JPMorgan Chase Bank, N.A. v. IDW Group, LLC*,
  2009 U.S. Dist. LEXIS 9207, at **16 (S.D.N.Y. Feb. 9, 2009) ..............33; 34
*Kapsis v. Am. Home Mortg. Servicing Inc.*,
  2013 U.S. Dist. LEXIS 39569, *64 (E.D.N.Y. Feb. 14, 2013)...................29
*Kehr Packages, Inc. v. Fidelcor, Inc.*,
  926 F.2d 1406, 1409 (3d Cir. 1991)...............................................5
*LNC Invs., Inc. v. First Fid. Bank, N.A.*,
  935 F. Supp. 1333, 1347 (S.D.N.Y. 1996)....................................10; 31
*MASTR Asset Backed Securities Trust 2006-HE3 by U.S. Bank Nat'l Ass'n v WMC Mortgage Corp.*,
  2012 WL 4511065 (D. Minn. Oct. 1, 2012) ...................................23; 28
*Metropolitan West Asset Management, LLC v. Magnus Funding, Ltd.*,
  2004 U.S. Dist. LEXIS 11761, 2004 WL 1444868, at *4 (S.D.N.Y. 2004).....................7
*Morgan Guar. Trust Co. of N.Y. v. Bay View Franchise Mortgage Acceptance Co.*,
  No. 00 Civ. 8613, 2002 WL 818082, at *5 (S.D.N.Y. Apr. 30, 2002) ...........23
*Morse v Lower Merion School Dist.*,
  132 F.3d 902, 906 (3d Cir. 1992)..................................................5
*Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*,
  291 F.R.D. 47, 70 (S.D.N.Y. 2013) ...............................................25
*Peak Partners, LP v. Republic Bank*,
  191 Fed. Appx. 118, 126 n. 11 (3d Cir. 2006) ....................................7
*Peter Kiewit Sons' Co. v. Summit Constr. Co.*,
  422 F.2d 242, 270-271 (8th Cir. 1969) ..........................................29
*Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., NA*,
  907 F. Supp. 2d 536, 556 (S.D.N.Y. 2012)......................................10
*Poughkeepsie Gas Co. v. Citizens Gas Co.*,
  89 N.Y. 493, 497 (1882) ........................................................32

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*,
    2013 U.S. Dist. LEXIS 20214, *8 (S.D.N.Y. Feb. 14, 2013)............................................10

*Roneker v. Kenworth Truck Co.*,
    977 F. Supp. 237, 239 (W.D.N.Y. 1992) .........................................................................17

*SNS Bank, N.V. v. Citibank, N.A.*,
    777 N.Y.S.2d 62, 65 (App. Div. 1st Dep't 2004) ............................................................34

*State v. Johnson*,
    45 A.D.3d 1016, 1020 (3rd Dep't 2007)................................................................... 32; 33

*Sterling Fed. Bank, F.S.B. v. Bank of N.Y. Mellon*,
    No. 09 C 6904, 2012 WL 3101699 (N.D. Ill. July 30, 2012) ...........................................8

*Toone v. Wells Fargo Bank, N.A.*,
    Case No. 2:11–CV–17072011, U.S. Dist. LEXIS 109455 (D. Utah Sept. 27, 2011). 12; 13

*Trust for the Certificateholders of the Merrill Lynch Mortgage Pass-Through Certificates Series
1999-C1 v. Love Funding Corp.*,
    No. 04 Civ. 9890, 2005 WL 2582177 (S.D.N.Y. Oct. 11, 2005) ............................... 25; 26

*Tsereteli v. Residential Asset Securitization Trust*,
    2006-A8, 692 F. Supp. 2d 387, 392 (S.D.N.Y. 2010) .....................................................22

*United States v Day*,
    969 F.2d 39, 42 (3d Cir. 1992).........................................................................................5

*Velez v. Feinstein*,
    87 A.D.2d 309, 315, 451 N.Y.S.2d 110, 114-15 (1982)....................................................7

*White v. United States*,
    601 F.3d 545, 551 (6th Cir. 2010) ............................................................................ 5; 32

Plaintiff VNB Realty, Inc., by its counsel, Strasser & Associates P.C. and Talcott Franklin P.C., responds as follows to Defendant's Motion to Dismiss ("Motion").

## I. INTRODUCTION & PRELIMINARY STATEMENT

Plaintiff has filed this lawsuit to hold Defendant, Trustee U.S. Bank National Association ("Defendant" or "U.S. Bank"), accountable for its negligent failure to perform its duties in administering a trust in which Plaintiff is a beneficiary, which negligence was exacerbated by Defendant's conflict of interest.  In response, rather than denying that these grievous misdeeds occurred, Defendant audaciously argues that (like the "three mystic apes" atop the Toshogu Shrine in Nikko, Japan) the Trustee sees no evil, hears no evil, and speaks no evil.  In fact, Defendant tries to argue as a matter of law that, despite its actual knowledge that Plaintiff was being harmed, it had no legal duty to protect Plaintiff.  What is even worse, Defendant argues that its own conflict of interest is immaterial, because it had no duty to act as a real trustee anyway.  These arguments ignore Defendant's unwaivable duties under New York law to protect investors like Plaintiff. Thus, Plaintiff asks this Court to reject Defendant's argument that it can be a see nothing, hear nothing, and say (or do) nothing trustee and to instead hold Defendant, U.S. Bank, accountable for the damages Plaintiff sustained as a result of Defendant's breaches of duty.

Plaintiff owns beneficial interests ("Certificates") in two residential mortgage backed securities (RMBS) Trusts, CSMC 2006-8[1] and MALT 2007-1, for which Defendant serves as Trustee. In the Complaint (Doc. 1-1), Plaintiff alleges that it has experienced a drastic decline in the value of its investments in the Trusts as a result of Defendant's failure to address breaches of

---

[1] "CSMC 2006-8" is an abbreviated name for CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-8, and "MALT 2007-1 is an abbreviated name for MASTR Alternative Loan Trust 2007-1, Mortgage Pass-Through Certificates, Series 2007-1.

representations and warranties contained in Trust documents and stop and/or correct loan document deficiencies and improper servicing of loans. Plaintiff alleges that, as a result of this misconduct, Defendant violated the Trust Indenture Act ("TIA") (Count I), breached its duty of loyalty (Count II), breached its fiduciary duty (Count III), breached its contractual obligations (Count IV), was negligent (Count V), and breached the covenant of good faith and fair dealing (Count VII) and that is entitled to compensatory and punitive damages, injunctive relief, and such other relief as the Court deems just and proper.

The Court should reject all arguments made in Defendant U.S. Bank National Association's Memorandum of Law in Support of Its Motion to Dismiss ("Defendant's Memo").

First, the Court should reject Defendant's argument that Plaintiff had a duty under the "no-action" clauses in the Trust Pooling and Servicing Agreements ("PSAs") to provide notice before filing suit because no such duty exists. The PSAs do not require notice outside the context of a Servicer Event of Default. The duty to provide notice, moreover, should be excused, even if otherwise required, because notice would have been futile in this case. Finally, notice is not required when unwaivable trustee duties are at issue.

Second, the Court should reject Defendant's argument that Plaintiff's robo-signing claims are not supported by factual allegations or the PSA and are implausible.  Specifically, the Court should decline Defendant's implicit invitation to apply a heightened pleading standard and decide disputed factual issues at the motion to dismiss stage. Plaintiff sufficiently alleges: (1) a duty and failure to avoid a conflict of interest concerning robo-signing; (2) robo-signing with respect to mortgage loans in these Trusts; (3) imputed knowledge of misconduct by Defendant; (4) a duty and failure to act because of the conflict of interest; (5) harm and/or damages; and (6) plausible causes of action based on conflict of interest.

Third, the Court similarly should reject Defendant's argument that Plaintiff's repurchase demand claims are not adequately supported, which also would require application of a heightened pleading standard and resolution of disputed factual issues. At the motion to dismiss stage, a plaintiff has no obligation to allege breaches in connection with specific loans if it alleges widespread abandonment of underwriting guidelines, default rates and credit downgrades, or failures that were not isolated. Plaintiff has alleged all of the above and more in its Complaint. In addition, Defendant glosses over its duty to pick up the scent and nose to the source upon discovering facts merely suggestive of a breach, as well as Plaintiff's allegations that Defendant had actual knowledge of breaches.

Fourth, the Court should reject Defendant's request that each of Plaintiff's causes of action be dismissed. Count I, alleging a Trust Indenture Act claim, is sufficient, because the Complaint alleges an Event of Default. Further, Defendant's argument ignores both its unwaivable duties under the TIA and that the TIA requires only a "default," not an "Event of Default," to trigger application of the reasonable person standard. Counts II and III, alleging breaches of the duty of loyalty and fiduciary duty, are sufficient for the reasons set forth in Section III.B.1 of this brief concerning the duty to avoid conflicts of interest, and Count III is not duplicative of Count IV's breach of contract claim because it concerns an extra-contractual duty. Count IV, alleging breach of contract, is sufficient because it alleges a failure to hold the loans for the benefit of investors like Plaintiff in violation of the PSAs' terms. Count V, alleging negligence, is sufficient because it alleges a failure to perform ministerial duties with due care. Count VI, seeking injunctive relief, is sufficient because it alleges irreparable harm in the form of robo-signed documents and incomplete loan files for which Plaintiff is suffering ongoing harm and for which injunctive relief in part may be the only adequate remedy. Finally, Count VII, alleging breach of the implied

covenant of good faith and fair dealing, is sufficient because Plaintiff has alleged conduct that subverts the contract's purpose without violating its express terms.

For these reasons, discussed in detail below, Plaintiff respectfully requests that the Motion be denied.

## II.  STANDARD OF REVIEW FOR MOTION TO DISMISS

Defendant asks this Court to impose a heightened pleading standard inconsistent with the Federal Rules of Civil Procedure and United States Supreme Court precedent. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In assessing plausibility on motions to dismiss, courts must apply all traditional rules that favor plaintiffs. All factual allegations must be taken as true, even if "doubtful in fact." *Twombly*, 550 U.S. at 555. This rule applies with full force to allegations that are generally worded, without "specific facts." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *see also Iqbal*, 556 U.S. at 678 ("detailed" allegations not required); *Twombly*, 550 U.S. at 569 n.14, 570 (neither "particularized" allegations nor "fact pleading of specifics" is required). Courts, moreover, "presume that general allegations embrace those specific facts that are necessary to support the claim." *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010).

Courts also must draw all inferences in favor of Plaintiff, *see, e.g., Morse v Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1992), who is entitled to the "benefit of imagination." *Twombly*, 550 U.S. at 563. Complaints must be construed liberally in Plaintiff's favor, *see, e.g., United States v Day*, 969 F.2d 39, 42 (3d Cir. 1992), and must be construed "as a whole, not parsed piece by piece." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

Finally, Defendant bears the burden of persuasion on a motion to dismiss. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). To prevail, Defendant must demonstrate that Plaintiff is not entitled to relief "under any reasonable reading of the pleadings", *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993), and that Plaintiff's claims are so farfetched as to be implausible – that even taking all the factual allegations as true, they are "clearly entitled to judgment" at this early procedural stage. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

### III. ARGUMENT

### A. The Purported "No Action" Clauses in the PSAs Do Not Bar Plaintiff's Claims.

Defendant argues that "no-action" clauses in the PSAs required Plaintiff to make a demand upon one or more specified transaction parties as a condition precedent to filing this lawsuit. Defendant's Memo § II.A., pp. 13-16. This argument fails because notice was not required under the express terms of the PSAs, would have been futile in any event, and is inapplicable to unwaivable Trustee duties.

First, as Defendant must concede, the no-action clauses apply only in limited circumstances in which there is an "Event of Default" (CSMC 2006-8 PSA § 12.07) or an "Event of Termination" (MALT 2007-1 PSA § 11.08).[2] These contractually-defined "Events of Default" pertain to actions

---

[2] Declaration of Derek Witte ("Witte Decl.") ¶ 7.

or inactions of the Servicer or Master Servicer – not the Trustee. (CSMC 2006-8 PSA § 8.01; MALT 2007-1 PSA § 7.01).[3] Plaintiff is not suing the Master Servicer or a Servicer. Plaintiff is suing the Trustee. The Trustee violated the two unwaivable duties applicable to any Trustee (including an indenture Trustee): specifically, Defendant failed to perform key ministerial duties related to acquisition of the trust corpus and Defendant had a conflict of interest. Plaintiff alleges that *Defendant was negligent* because foreclosures were taking place on loans where somehow the signatures of people claiming to be Defendant's officers were being affixed to the underlying paperwork, even though Defendant's officers were not signing the papers. A responsible institution would have questioned how and why this was happening and demanded that the practice cease. But that never happened here because *Defendant had a conflict of interest* as it was engaging in the same activity when acting as a servicer on other loans on behalf of other trusts. These failures are those of the Defendant, not a servicer. There is thus no notice requirement because Plaintiff's claims are against the Trustee, not against the Servicer or Master Servicer for an Event of Default or Termination. "Where a 'no action' clause relates to an Event of Default by its own terms, it does not bar a plaintiff from seeking a remedy for a claim outside the scope of the 'no action' clause, including seeking 'damages for mismanagement of the trust collateral and a failure to safeguard plaintiff's rights.'" *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 473 (S.D.N.Y. 2011) (*quoting Metropolitan West Asset Management, LLC v. Magnus Funding, Ltd.*, 2004 U.S. Dist. LEXIS 11761, 2004 WL 1444868, at *4 (S.D.N.Y. 2004)).

Second, even if the no-action clauses nominally applied to the claims at issue, notice would have been entirely futile because the no-action clauses require notice to "the Trust Administrator" (CSMC 2006-8 PSA § 12.07) and "the Trustee or the Trust Administrator" (MALT 2007-1 PSA

---

[3] *Id.* at ¶¶ 6, 7.

§ 11.08).[4] The Trustee is, of course, <u>Defendant</u>, and the Trust Administrator is none other than <u>Wells Fargo</u>, the very same parties that engaged in the egregious robo-signing and other misconduct alleged in the Complaint.[5] Because this is a classic "fox guarding the chicken coop" scenario, giving Defendant and/or Wells Fargo notice is obviously absurd and would be futile. As Defendant itself concedes, an "exception to enforcement of a no-action clause occurs with respect to claims against the Notice Party itself because it would be 'absurd' to demand that the Notice Party sue itself." Defendant's Memo, p. 14 (citing *Cruden v. Bank of New York*, 957 F.2d 961, 968 (2d Cir. 1992)). *See Peak Partners v. Republic Bank*, 191 Fed. Appx. 118, 126 n.11 (3d Cir. 2006) (upholding district court ruling that plaintiff "was not required to comply with the no-action clause with regard to its suit again U.S. Bank because it would have required U.S. Bank, in effect to sue itself" (internal quotations omitted)); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 186 (S.D.N.Y. 2011) (concluding no action clause did not bar lawsuit against trustee where plaintiffs alleged trustee knew of predatory servicing but failed to report breaches to certificateholders); *CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 477-78 (S.D.N.Y. 2010) (finding application of no action clause futile); *Velez v. Feinstein*, 87 A.D.2d 309, 315, 451 N.Y.S.2d 110, 114-15 (1st Dep't 1982) (finding notice not required when "because of the trustee['s] conflict of interest, or some other reason, it is futile to make such a demand.").[6]

---

[4] *Id.* at ¶ 7.

[5] *Id.* at ¶¶ 6, 7.

[6] Significantly, Defendant knew that Wells Fargo was both Trust Administrator and the Master Servicer. So, when the Trustee was given overwhelming public notice of Wells Fargo's Mortgage Loan servicing practices adverse to the Certificateholders, the Trustee should have known Wells Fargo was conflicted from serving in its role. Thus, the Trustee should have acted on its own to protect the interests of the Certificateholders, instead of sitting idly by waiting for the Certificateholders to provide a meaningless and futile notice to Wells Fargo. *See Bank of N.Y. v Tyco Int'l Grp., S.A.*, 545 F. Supp.2d 312, 324 n.81 (S.D.N.Y. 2008) ("it has been established for over a century that a party may not insist upon performance of a condition precedent when its

Third, Plaintiff's causes of action involve *unwaivable* duties of the Trustee. These unwaivable duties were created under New York common law precisely to protect the investor who did not have sufficient voting rights to protect itself against the Trustee. As Judge Learned Hand explained, the courts of New York cannot give "any countenance to the notion that, so far as a corporation sees fit to assume the duties of an indenture trustee, it can shake off the loyalty demanded of every trustee, corporate or individual. We can find no warrant for so supposing; and, indeed, a trust for the benefit of a numerous and changing body of bondholders appears to us to be preeminently an occasion for a scruple even greater than ordinary; for such beneficiaries often have too small a stake to follow the fate of their investment and protect their rights." *Dabney v. Chase Nat'l Bank*, 196 F.2d 668, 671 (2d Cir. 1952). No clause in the PSA, including the no action clause, can prevent a cause of action for these unwaivable duties. For these three reasons, Defendant's no-action clause argument should be rejected.

Finally, Defendant's citation to *Sterling Fed. Bank, F.S.B. v. Bank of N.Y. Mellon*, No. 09 C 6904, 2012 WL 3101699 (N.D. Ill. July 30, 2012), is puzzling, because it supports Plaintiff's, not Defendant's position. In *Sterling*, the court affirmed the decision it had made two times before: that the "no action" clauses in PSAs other than those at issue here "did not apply" to the trustee defendant, because it would have been "'absurd' [for that plaintiff] to ask BNYM to sue itself." *Id.* at *1. Presumably, Defendant cites to this case because the court indirectly held that "no action" provisions could apply when the notice party or trust administrator are an innocent third-party. *Id.* at *2. However, this unpublished Illinois decision applying New York law would not apply here because Plaintiff has alleged that both notice parties engaged in unlawful conduct. Therefore,

---

non-performance has been caused by the party [it]self"); *In re Bankers Trust Co.*, 450 F.3d 121, 129 (2d Cir. 2006).

according to the argument in *Sterling* itself, it would have been "absurd" for Plaintiff to provide notice to either.

**B.    Defendant Breached Its Duty to Avoid Conflicts of Interest, Thereby Failing to Take Any Action Concerning Wells Fargo's Robo-signing and Other Improper and Illegal Acts to the Detriment of the Certificateholders.**

As explained in much greater detail in the Complaint, Wells Fargo as Master Servicer engaged in numerous improper and illegal acts, including robo-signing, in servicing loans and pursuing foreclosures (Complaint ¶¶ 69–84, 90–96, 98–104). Defendant, furthermore, engaged in the very same acts (*id*. at ¶¶ 82, 83, 85, 86, 97, 106, 108), and this conflict of interest prevented Defendant from taking action to protect Plaintiff (*id*. at ¶¶ 66, 88, 121–126), thereby significantly damaging Plaintiff (*id*. at ¶¶ 87, 89, 113–120, 127, 128).

This breach of Defendant's duty to avoid conflicts of interest forms the basis for Count II (Breach of Duty of Loyalty) and Count III (Breach of Fiduciary Duty), but also relates to Defendant's failure to take action to protect the Certificateholders as described in all Counts of the Complaint. Moreover, Wells Fargo's robo-signing is one example of servicing misconduct that touches on all Counts of the Complaint. Thus, the primary thrust of Defendant's Motion, *see* Defendant's Memo § II.B, is to argue that it owed no duty to avoid conflicts of interest and that the robo-signing alleged in the Complaint is somehow insufficient or not actionable. These arguments are meritless, as explained below.

1.    <u>Indenture trustees have an unwaivable duty to avoid conflicts of interest.</u>

Defendant argues that its duties are limited to the duties expressly enumerated by the governing agreements. However, under well-established New York law,[7] every trustee, including an indenture trustee whose duties otherwise are limited to those expressed in the contract, has unwaivable extra-contractual duties. These duties include "two extra-contractual pre-default duties of indenture trustees. First, an indenture trustee must avoid conflicts of interest and discharge its obligations 'with absolute singleness of purpose,' because of the inability of dispersed investors to enforce their rights. Second, an indenture trustee may be liable in tort for failure to perform basic non-discretionary ministerial tasks." *LNC Invs., Inc. v. First Fid. Bank, N.A.*, 935 F. Supp. 1333, 1347 (S.D.N.Y. 1996) (quoting *Dabney* v. *Chase Nat'l Bank*, 196 F.2d 668, 670 (2d Cir. 1952)).[8] At bottom, this case is about Defendant's failure to fulfill these duties, which exist irrespective of the terms of the PSA or trust document.

"[E]very trustee — including indenture trustees whose responsibilities are limited by contract — has an absolute duty to avoid conflicts of interest. This duty applies notwithstanding the terms of the instrument that purports to define the duties of the trustee." *Bank of N.Y. Mellon*, F. Supp. 2d at 364.[9] "It would appear indisputable that … the present defendant [indenture trustee]

---

[7] New York law applies to this action according to contractual choice of law provisions. Defendant's Memo, p. 9 n.14.

[8] Defendant may take the position that it is not an indenture trustee but some strange hybrid trustee that is free from the dictates of New York law governing trustees. However, New York courts have applied these basic duties to trustees of RMBS trusts like those at issue here, *see Bank of N.Y. Mellon v. Walnut Place LLC*, 819 F. Supp. 2d 354 (S.D.N.Y. 2011), *rev'd on other grounds*, 673 F.3d 169 (2d Cir. 2012), and have found that the Trust Indenture Act applies to RMBS trusts and their trustees, including U.S. Bank. *Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., NA*, 907 F. Supp. 2d 536, 556 (S.D.N.Y. 2012); *see also Retirement Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 2013 U.S. Dist. LEXIS 20214, at *8 (S.D.N.Y. Feb. 14, 2013).

[9] *See also Dabney*, 196 F.2d at 670 (Judge Learned Hand writes: "It is a part of [the trustee's] obligation to give his beneficiary his undivided loyalty, free from any conflicting personal interest; an obligation that has been nowhere more jealously and rigidly enforced than in New York where these indentures were executed.").

owed the trust beneficiaries … the fiduciary obligation of undivided loyalty." *Beck v. Manufacturers Hanover Trust Co.*, 218 A.D.2d 1, 12, 632 N.Y.S.2d 520 (1st Dep't 1995). In *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466 (S.D.N.Y. 2011), the court affirmed the duty to avoid conflicts of interest, holding that plaintiff's claims that indenture trustee BNYM breached that duty and "was motivated to protect its financial self-interest" was "sufficient to withstand a motion for summary judgment." *Id*. at 483. Moreover, it makes no difference if the trustee acts or neglects to act; the trustee can still violate its duty to avoid a conflict of interest. *Dabney,* 196 F.2d at 670. The fact that a conflict *may* influence the trustee's decision is enough to hold the trustee liable. *Id*.

> 2.    Plaintiff clearly alleges that robo-signing and other misconduct occurred with respect to the Trusts.

Defendant argues that "Plaintiff does not plead that robo-signing actually occurred in connection with the Trusts…." Defendant's Memo § II.B.1, pp. 16-17. That is incorrect. Plaintiff alleges that "U.S. Bank itself or acting through the originators, sellers, <u>servicers and the Master Servicer</u>, filed flawed, misleading and unlawful documents as set forth in the OCC and Federal Reserve Consent Orders <u>with regard to the Trusts</u>." (Complaint ¶ 86). "Because Defendant U.S. Bank was itself engaged in massive robo-signing with regard to other deals, the Defendant labored under a conflict of interest that made it impossible for the Defendant to prevent, remedy, or address <u>the robo-signing within the Trusts at issue</u>." (*Id*. at ¶ 88). In support of these allegations, Plaintiff sets forth testimony of Wells Fargo employees, Federal Reserve Consent Orders, investigation findings, Office of Inspector General Audits, and complaints filed by a coalition of the 50 state Attorneys General, among other things, demonstrating that Wells Fargo engaged in a widespread campaign of robo-signing and other unlawful acts. (*Id*. at ¶¶ 66–83). This is not a matter of isolated misconduct. These allegations, taken as true, are more than sufficient under *Twombly* and *Iqbal* to state a plausible claim for relief.

Defendant improperly attempts throughout its Memorandum of Law to impose a higher pleading standard than that required under *Twombly* and *Iqbal*. For example, Defendant concedes that Wells Fargo was Master Servicer of the Trusts, but argues that the Complaint is insufficient because purportedly "more than a dozen different Servicers actually serviced loans in the Trusts." Defendant's Memo, p. 19. The extent to which Wells Fargo as Master Servicer, versus other servicers, was engaged in servicing of the loans at issue goes far beyond the initial threshold of a motion to dismiss; it is a matter of fact reserved for discovery. Plaintiff is not required to plead additional facts, particularly before any discovery has occurred.

Furthermore, the list of servicers is deceptive. For example, Wells Fargo has acquired Wachovia,[10] and Bank of America acquired Countrywide.[11] Moreover, Bank of America and Countrywide are subject to consent orders virtually identical to Wells Fargo concerning improper servicing. (Complaint ¶¶ 81–82).[12] Thus, Defendant's suggestion that the Trusts at issue involved a multitude of servicers with clean hands – not just Wells Fargo – is misleading at best, in addition to being irrelevant at the pleading stage.

Defendant relies upon a number of wrongful foreclosure actions in an effort to impose this heightened pleading standard, but the cited cases are readily distinguishable. For example, in *Toone v. Wells Fargo Bank, N.A.*, Case No. 2:11–CV–17072011, U.S. Dist. LEXIS 109455 (D. Utah Sept. 27, 2011), homeowners filed suit to challenge foreclosure, asserting *inter alia* a claim for declaratory judgment that the lender did not hold legal title due to improper endorsement of the note. The district court dismissed the claim because, unlike in the case at hand, "[t]hough Plaintiffs allege that the supposed invalidity of 'robo-signing' has been 'documented extensively

---

[10]    https://www.wellsfargo.com/about/corporate/wachovia
[11]    http://www.bloomberg.com/apps/news?pid=newsarchive&sid=aqKE9kRcKDEw
[12]    http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47b.pdf

in cases throughout the country,' they fail to provide any supporting citations." *Id*. at *9; *see also Toone*, 716 F.3d 516, 521 (10th Cir. 2013) (holding not that robo-signing could not be a basis for relief, but that the allegations were far too general). Similarly, in *Butler v. Wells Fargo Bank, N.A.*, No. MJG–12–2705, 2013 U.S. Dist. LEXIS 4424 (D. Md. Jan. 11, 2013), another homeowner challenge to foreclosure, the homeowner merely alleged in one sentence that "as would later be revealed by various news media, during this time, many mortgage servicers and substitute trustees were filing affidavits and papers in foreclosure actions" that were robo-signed. *Id*. at **6-7. Plaintiff's allegations are more detailed and far less generalized than those in *Butler* and *Toone*.[13]

Plaintiff will not summarize the many additional wrongful foreclosure actions cited by Defendant, most in a lengthy footnote, other than to note that the plethora of lawsuits spawned by robo-signing actually provides additional support for one component of Plaintiff's damages: "The Defendant's failure to take corrective action has made it costly, and in some cases nearly impossible, for anyone to effectively and efficiently pursue foreclosures on residential mortgages within the Trusts, causing substantial damages to Plaintiff." (Complaint ¶ 87).

All of these wrongful foreclosure suits are distinguishable for essentially the same reason: The robo-signing allegations in those cases were truly "bald allegations" – just a sentence or two often without any supporting evidence. By contrast, the Complaint in the present action devotes at least 15 pages (*Id*. at pp. 16–30, ¶¶ 66–85, 90, 91, 96–106, 108) to detailing myriad evidence that Wells Fargo and Defendant engaged in a widespread campaign of robo-signing and other misconduct.

---

[13] Of course, some generalization is inevitable when dealing with thousands upon thousands of loans, such as in this action, another significant difference from wrongful foreclosure suits such as *Butler* and *Toone*.

3.    <u>Plaintiff plausibly alleges that Defendant was imputed with knowledge of robo-signing and other servicer misconduct.</u>

Defendant argues that it cannot be imputed with knowledge of robo-signing and other misconduct by Wells Fargo, as alleged by Plaintiff (Complaint at ¶ 123), because these acts only came to light after lengthy investigations performed by government agencies, and Defendant "would put itself at risk of liability if, on its own, the RMBS Trustee decided to spend Trust assets to conduct an expensive investigation…." (Defendant's Memo § II.B.2, pp. 19–20). This argument is a red herring because Plaintiff does not allege that Defendant breached a duty to "conduct an expensive investigation into robo-signing."

Defendant's argument as to whether it needed to perform such an investigation before taking action to protect Plaintiff is irrelevant. For purposes of withstanding this Motion, Plaintiff has plausibly alleged that Defendant was imputed with knowledge of the misconduct based on copious evidence of robo-signing and other misconduct detailed in the Complaint that had already been uncovered by others, not to mention the fact that Defendant was <u>itself</u> the subject of investigations into robo-signing and had <u>itself</u> engaged in this misconduct (Complaint ¶¶ 83, 85, 86). Defendant breached its duty to avoid conflicts of interest, and, because of this egregious conflict, took <u>no</u> discretionary action, not even alerting Plaintiff and other investors of the possibility that Wells Fargo, as servicer of the Trusts, was engaged in this misconduct.[14]

4.    <u>Defendant's argument that it had no duty to police servicer misconduct is also a red herring.</u>

---

[14] Defendant's argument that "Plaintiffs do not allege plausibly how they were harmed by U.S. Bank's 'failure' to act on a problem identified and remedied by myriad state and federal regulators", Defendant's Memo, p. 21, is addressed in Section III.B.5 below.

Defendant also argues that the PSAs specifically exculpate it from any obligation to perform, or be responsible for the manner of performance of, any of the obligations of the servicers and that it "had no duty to police alleged servicer misconduct." Defendant's Memo § II.B.3, p. 21. This is just another version of Defendant's contention that it owed no duty to perform an investigation into the alleged misconduct and is also a red herring for the same reason.  And, as discussed in Section IV.D below, Defendant did owe express duties to take action, both under the Trustee Indenture Act (Count I) and pursuant to the contractual requirement that Defendant hold the trust corpus for the benefit of the Certificateholders (Count IV).  Moreover, the duty to avoid conflicts of interest is unwaivable, and therefore unaffected by other provisions of the contract.

5.     Plaintiff more than adequately pleads its damages.

Defendant contends that Plaintiff's alleged damages are both insufficient and implausible. Defendant's Memo § II.B.4, pp. 23–24. Here, Defendant continues to intentionally blur the line between issues of fact for trial and the federal pleading requirements. For example, Defendant argues that Plaintiff's alleged damages are more attributable to poor performance of the loans. This is an issue of fact and has no bearing on whether Plaintiff has alleged damages.

Plaintiff need not prove its damages at the pleading stage [*Graco, Inc. v. PMC Global, Inc.*, 2009 U.S. Dist. LEXIS 26845, 70 (D.N.J. Mar. 31, 2009)], nor must it even allege "every step" between the wrong and the harm. *See Aramjoo v. Sallie Mae Inc.*, No. 4:11–cv–00077–DGK, 2011 WL 3568903, *2 (W.D. Mo. Aug. 12, 2011) ("Despite the Complaint not delineating every step of the relationship between Plaintiff's harm and the alleged violation, the harm as pled is plausible.").

That said, Plaintiff has alleged in detail how it has been damaged by Defendant's failure to address or remedy Wells Fargo's robo-signing and other malfeasance due to Defendant's conflict of interest. For example:

- Wells Fargo charged improper foreclosure fees to borrowers, and because borrowers in default lack the resources to pay, these fees are effectively "passed along to investors such as Plaintiffs." (*Id*. at ¶¶ 113-114).

- Due to Defendant and Wells Fargo's enumerated misconduct, "no foreclosure can take place at the cost anticipated when Plaintiff invested in the Trusts, because the costs associated with preparing foreclosure documentation and participating in the enhanced foreclosure processes have increased exponentially." (*Id*. at ¶ 87).

- Blowback from the robo-signing and other servicer misconduct has caused a significant "'logjam' in foreclosures" which naturally delays and draws out foreclosure proceedings, thereby resulting in a number of additional and increased expenses, itemized in the Complaint. (*Id*. at ¶¶ 87, 89, 116).

- Defendant's "actions and inaction have harmed Plaintiff, by proximately causing substantial and unwarranted losses to the investments in the Trusts." (*Id*. at ¶ 127).

Defendant next argues Plaintiff is trying to have it both ways: "under Plaintiff's theory, U.S. Bank should have stopped robo-signing by Servicers, yet U.S. Bank also should be held responsible for increased costs that ensued once robo-signing was stopped." Defendant's Memo, p. 24. This assumes Plaintiff would not have been further damaged had the robo-signing and other improper acts been allowed to continue, which is, of course, absurd. Defendant cannot seriously suggest that Plaintiff would not have been damaged if Wells Fargo had been allowed to continue engaging in its illegal conduct. The longer these acts were allowed to continue, the more damage Plaintiff suffered. Foreclosure proceedings are now much more time consuming and expensive because of Defendant's prior bad conduct. (Complaint ¶¶ 87, 89, 116).

Defendant next argues it is immune from any damages resulting from "increased costs associated with new foreclosure laws" and other actions taken to remedy the robo-signing and other misconduct because the PSAs do not allow for "special, indirect or consequential loss or

damage….” Defendant's Memo, p. 24. First, this provision exists for only one of the two Trusts at issue; the MALT 2007-1 PSA contains no such provision. Second, this purported waiver is irrelevant because Plaintiff does not seek special, indirect, or consequential damages. Plaintiff instead seeks damages for direct losses. "Direct damages … are those which are the natural and probable consequence of the breach." *Roneker v. Kenworth Truck Co.*, 977 F. Supp. 237, 239 (W.D.N.Y. 1992) (internal quotations omitted).[15] Defendant directly harmed Plaintiff by allowing the Trusts to incur costs and sustain losses caused because Defendant knowingly allowed the servicer and sub-servicers to forge documents and breach recording statutes, making it difficult or impossible to prove ownership of the underlying mortgages and unnecessarily draining Trust corpuses. These damages are neither remote, nor consequential, but are the direct consequence of Defendant's breach of its duty to avoid conflicts of interest. In any event, "the precise demarcation between direct and consequential damages is a question of fact … [which] must be left for resolution at trial." *Id.*

Additionally, the consequential damages argument is yet another red herring because Plaintiff is not alleging that the costs of foreclosures went up because the regulations changed. Rather, Plaintiff alleges that foreclosure costs went up directly damaging Plaintiff because Defendant allowed the documents it held in trust to be forged and frustrate the recording process. (Complaint ¶ 87). It is perplexing that Defendant – whose actions caused these damages and, in part, the economic crisis of the last decade – could argue that the problem is increased regulation,

---

[15] *See also Dabney v. Chase Nat'l Bank*, 196 F.2d 668, 673 (2d Cir. 1952) ("It is hornbook law that the beneficiary's remedies for a breach of trust are the recovery of any damages which may result, or of any profit which the trustee may have gained.").

not its own bad acts, which unfairly shifted the burden of Defendant's misconduct to innocent investors like Plaintiff.

Finally, Defendant argues that Plaintiff's damage allegations are insufficient because they have not expressly alleged that the myriad "additional expenses associated with foreclosures" set forth in the Complaint (¶ 116) were borne by Plaintiff. Defendant's Memo, pp. 24–25. But Defendant is again attempting to impose a much higher pleading standard than required by *Twombly* and *Iqbal*. For now, Plaintiff has alleged more than sufficient factual matter concerning the various increased costs and expenses pertaining to servicing and foreclosure of the loans (Complaint ¶¶ 87, 113, 116), and that these additional costs have impaired the value of Plaintiff's investments in the Trusts (*Id*. at ¶¶ 89, 87, 141). These allegations, accepted as true, state a claim to relief plausible on its face. Plaintiff will later prove its damages in the course of this litigation.

6.  Plaintiff's causes of action based on Defendant's conflict of interest are plausible and well-founded.

Defendant argues that "Plaintiff's conflict of interest theory is implausible" for a number of reasons, all of which are without merit. (Motion § II.B.5, pp. 25–28). Defendant first argues that even if the PSAs granted Defendant discretion to act, "the PSAs are clear that a discretionary right of the RMBS Trustee *cannot* be construed as a duty." *Id*. at 25 (original emphasis). But as discussed in Sections III.B.3 and III.B.4 *supra*, Defendant is again creating a straw man argument. While Defendant had the discretion to act to prevent, or at least notify Plaintiff and other investors of, robo-signing and other misconduct, Plaintiff does not allege a breach of any express contractual duty to do so. Instead, Defendant breached its extra-contractual duty to avoid conflicts of interest. It was this significant conflict – that Defendant was itself engaged in the same acts – that prevented Defendant from even considering how and whether to exercise its discretion.

18

While Defendant suggests that a breach of the duty to avoid conflicts of interest is only actionable if it causes the trustee to breach an additional <u>express</u> contractual duty, this argument would render the established duty to avoid conflicts of interest wholly superfluous (*see* Section III.B.1 *supra*). The purpose of the duty to avoid conflicts of interest is to make certain that the trustee is free to exercise its discretion in favor the certificateholders.

Defendant next argues that it did not owe a contractual duty to "launch[] its own investigation into servicing of the Trusts" and it "is simply not plausible to infer" that it would have done so but for its conflict of interest. Defendant's Memo, pp. 25–26. As explained in Section III.B.3 above, this is pure conjecture on the part of Defendant and does not undermine the plausibility of Plaintiff's claims. Moreover, whether Defendant would have performed an investigation is irrelevant because Defendant could have taken other discretionary actions, such as providing notice to Plaintiff and the other investors and taking steps to stop the misconduct. As explained in the Complaint, "[b]ecause Defendant U.S. Bank was itself engaged in massive robo-signing with regard to other deals, the Defendant failed to prevent, remedy or even address the robo-signing within the Trusts at issue." Complaint ¶ 88. Indeed, Defendant's unlawful conflict of interest prevented it from even considering how to discharge its duties.

Defendant then argues that Plaintiff's claims are "further belied by the fact that Plaintiff does not plead that *any* RMBS trustee that did not have U.S. Bank's so-called conflict of interest took the steps that Plaintiffs claim the U.S. Bank should have taken." Defendant's Memo, p. 26 (emphasis in original). The actions of other trustees are, of course, irrelevant to Defendant's failures and therefore not pleaded. Further, the RMBS trustee business is concentrated in the hands of a very few entities, the vast majority of whom, like Defendant, also serviced loans and are also

under a consent order. In any event, other trustees not under a similar conflict of interest have exercised their discretion by providing notice of robo-signing to certificateholders.

Finally, Defendant argues that Plaintiff has merely alleged a "hypothetical conflict" because it is based on Defendant's failure to act, as opposed to taking some "direct" action in conflict, and that a failure to act does not support a cause of action. This is wrong on both counts. First, there is nothing "hypothetical" about Defendant's inaction. The Complaint details Defendant's failure to act, and the conflict that was the basis therefore, in great detail. (*See, e.g.*, Complaint ¶¶ 85-89).

Further, New York law does not suggest that a cause of action for breach of the duty to avoid conflicts of interest can only be premised on an act as opposed to a failure to act. The purported authority cited by Defendant is distinguishable because the plaintiffs in those cases did not explain <u>how</u> the indenture trustee's alleged conflict of interest caused the trustee to act or not act to the detriment of the plaintiffs, as opposed to the Complaint, where this is thoroughly detailed. *See, e.g.*, Complaint ¶ 88 ("Because Defendant U.S. Bank was itself engaged in massive robo-signing with regard to other deals, the Defendant failed to prevent, remedy or even address the robo-signing within the Trusts at issue."). For example, the court in *In re E.F. Hutton Southwest Properties II, Ltd.*, 953 F.2d 963, 972 (5th Cir. Tex. 1992), remarked that "[a] mere hypothetical possibility that the indenture trustee might favor the interests of the issuer merely because the former is an indenture trustee does not suffice" (emphasis added). Similarly, in *Ellington Credit Fund* 837 F. Supp. 2d at 187, the court concluded that the plaintiff's allegations of a conflict of interest were insufficient (though not in the context of a cause of action for breach of implied duty

to avoid such conflicts) because the plaintiff failed to provide <u>any</u> explanation of a conflict that prevented the indenture trustee from taking action.[16]

In contrast to the cited cases, Plaintiff has provided more than sufficient detail in the Complaint to state a cause of action against Defendant for breaching its implied duty to avoid conflicts of interest, *i.e.,* taking no action regarding Wells Fargo's robo-signing and other misconduct because Defendant was engaged in the same misconduct.

**C.    Defendant's Arguments In Opposition to Plaintiff's Claims Regarding Representation and Warranty Breaches Are Unavailing.**

     1.   <u>Plaintiff has adequately alleged Actual Breaches of Representations & Warranties With Regard To The Underlying RMBS Trusts.</u>

Defendant argues that Plaintiff's claims are somehow inadequate because the Complaint "does not identify a single loan in either of the Trusts about which a representation and warranty was actually breached." Defendant's Memo, p. 29. This familiar divide-and-conquer argument lacks credibility. Plaintiff alleges that, during the same time period, both U.S. Bank and Wells Fargo themselves were recklessly originating large volumes of mortgages in violation of their own representations and warranties. Complaint ¶¶ 53, 54. In response, Defendant argues that it is not enough to allege that the loans backing the Trusts in this case were originated and serviced in violation of the representations and warranties regarding their quality. Not only does this argument ring hollow because Defendant is the one holding the mortgage files containing proof of such breaches, but also because Plaintiff is simply not required to allege the particular loans "about which a representation and warranty was actually breached." *See* Defendant's Memo, p. 29.

---

[16] "They contend that [trustee] M&T should have terminated SPS when it learned of its misconduct in the *Curry* and *FTC* settlements, and, instead proceeded to 'engineer[] a release for itself.' It is undisputed, however, that M&T was not a party to the *Curry* and *FTC* lawsuits or a signatory to the global release, and was merely included along with all "persons or entities that are or have been investors, owners, trustees or beneficiaries" of the loans at issue in those cases." *Ellington*, 837 F. Supp. 2d at 187 (emphasis added).

Defendant fails to cite a single case in support of its argument because the law is to the contrary. A "plaintiff need not allege that any particular loan or loans were issued in deviation from the underwriting standards, so long as the complaint alleges 'widespread abandonment of underwriting guidelines.'" *Employees' Ret. Sys. of the Virgin Islands v. J.P. Morgan Chase & Co.*, 804 F. Supp. 2d 141, 152 (S.D.N.Y. 2011) (*quoting Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d 387, 392 (S.D.N.Y. 2010)). Furthermore, when a plaintiff alleges breaches of representations and warranties against a defendant with regard to a different securitization, but also alleges that the plaintiff's investments suffered "similar default rates and credit downgrades across securitizations in which those defendants participated," then the plaintiff's evidence "suggest[s] that these failures were not isolated." *Federal Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 490 n.14 (S.D.N.Y. 2012). Finally, a plaintiff's general allegations of representation and warranty violations taken together with the allegation that the rating agencies downgraded the plaintiff's actual investments bolsters plaintiff's representation and warranty allegations. *Federal Hous. Fin. Agency v. UBS Americas, Inc.,* 858 F. Supp. 2d 306, 332 (S.D.N.Y. 2012) ("UBS I").

Here, Plaintiff alleges that Countrywide was the loan originator for many of the loans in CSMC 2006-8 and that "[d]uring the time period when the loans for CSMC 2006-8 were originated, Countrywide originated loans recklessly, negligently and well below the standards required of it." Complaint ¶ 53. Plaintiff makes the same allegations with regard to Countrywide and Wells Fargo, which together originated a majority of the loans backing the MALT 2007-1 Trust. Complaint ¶ 54. Further, Plaintiff alleges that its investments suffered massive rating agency downgrades. Complaint ¶¶ 25, 26, 30, 31. What is more, Plaintiff alleges that the very loans at issue in the CSMC 2006-8 Trust violate representations and warranties regarding owner-occupied

properties, loan to value ratios, and underwriting standards. Complaint ¶¶ 55-60. Tellingly, Defendant does not argue that Plaintiffs failed to allege breaches of these loans, but instead pivots to its notice argument – implicitly conceding that Plaintiff has adequately alleged that these breaches indeed occurred. Defendant's Memo p. 30. For these reasons, Plaintiff has adequately pleaded that representation and warranty breaches occurred.

> 2.    Defendant May Not Blindly Rely On The Patently False Representations And Warranties Made By The Master Servicer, Sellers And Others.

Next, Defendant argues that "[i]t has no independent duty to investigate the veracity" of the sellers' and originators' representations and warranties regarding the quality of the loans in the two trusts at issue. Defendant's Memo, p. 29. Elsewhere, Defendant argues that it has no duty to enforce representations and warranties in the governing documents for the Trusts that it learns are false. Defendant's Memo p. 32. Defendant is wrong on both counts.

In *MASTR Asset Backed Securities Trust 2006-HE3 by U.S. Bank Nat'l Ass'n v WMC Mortgage Corp.*, 2012 WL 4511065 (D. Minn. Oct. 1, 2012), the U.S. District Court for the District of Minnesota described an RMBS trustee's duties when it receives "facts merely suggestive of a breach." *Id.* at *6. It held: "upon receipt of such notice, it becomes incumbent upon the buyer to pick up the scent and nose to the source. If the quest confirms this suspicion, then he must make [the] decision [to raise the claim] with reasonable dispatch." *Id.* at *7 (*citing Morgan Guar. Trust Co. of N.Y. v. Bay View Franchise Mortgage Acceptance Co.*, No. 00 Civ. 8613, 2002 WL 818082, at *5 (S.D.N.Y. Apr. 30, 2002)). What is more, a trustee who claims protection under the standard "Event of Default" provisions in a PSA, such as Defendant, may still be liable for negligence or misconduct, if it had actual knowledge that the contents of the trust were not what others claimed them to be. *BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 778 F. Supp. 2d 375, 396-97 (2011).

Here, Plaintiff has more than adequately alleged that Defendant received notice of breaches of representations and warranties, which is far more than facts "suggestive" of a breach. Complaint ¶¶ 32, 37, 56-61. Plaintiff further has alleged that the very loan documents that Defendant was required to hold on behalf of Plaintiff contained such notice, as well as facts "suggestive" of multiple breaches of representations and warranties. Thus, Defendant had an independent duty to "nose to the source" of those facts and to determine whether there indeed were breaches that harmed Plaintiff and other investors who relied on Defendant to protect their interests.

Taken together, this authority means that Defendant had a duty to nose to the source of the potential breaches of representations and warranties based both on the facts it actually knew and the contents of the mortgage files in its possession. The results of that quest would have stripped Defendant of the PSAs' protections and required it to take action. Defendant's argument that it could blindly rely on the representations and warranties of third parties and had no independent duty to act to enforce those representations and warranties – even in the face of suspicious and damning facts – should be rejected.

3.      Plaintiff Has Adequately Alleged Defendant's Actual Knowledge of the Breaches of Representations and Warranties, Although It Need Not Do So.

With regard to Plaintiff's allegation that Defendant was required to nose to the source and, if necessary to enforce the representations and warranties that others made regarding the quality of the loans in the RMBS trusts at issue, Defendant argues that Plaintiff has failed to state a claim because Plaintiff has not alleged that Defendant had actual knowledge of those breaches. Defendant's Memo, pp. 29-30. As set forth in Section III.C.2 *supra*, Defendant has made such allegations and they are more than adequate to survive the Motion. Complaint ¶¶ 32, 37, 56-61.

In addition, and in response to Defendant's argument that it did not receive adequate notice of either the representation and warranty breaches or default under the TIA, Defendant is estopped

24

from arguing that this condition precedent to its duties as trustee was not fulfilled. Under both the duty of good faith and fair dealing, and the prevention doctrine, "no person can rely on the occurrence or non-occurrence of a condition when he wrongfully prevented or caused it." *In re Gulf Oil/Cities Service Tender Offer Litig.*, 725 F. Supp. 712, 737 n.9 (S.D.N.Y. 1989) (*citing* 3A Corbin on Contracts § 654D at 931-32 (Kaufman Supp. 1989)); *see also Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n,* 291 F.R.D. 47, 70 (S.D.N.Y. 2013) (stating that trustee cannot rely on its own failure to escape its own liability). Here, Defendant itself caused this condition to fail, because its own impermissible conflict of interest caused it to put its head in the sand and ignore the numerous breaches and defaults with regard to Plaintiff's investments. Complaint ¶ 121. Plaintiff cannot hide behind the non-occurrence of this condition, because it caused the condition to fail.

**D.      Each of Plaintiff's Counts State a Cause of Action**

      1.    <u>Count I: Breach of Trust Indenture Act</u>

Defendant argues that Plaintiff fails to allege a Trust Indenture Act ("TIA") claim because it purportedly fails to allege an Event of Default and Defendant's knowledge thereof. Defendant's Memo § III.D.1. Defendant is mistaken as to both arguments.

Plaintiff does allege the occurrence of an Event of Default. *See* Complaint ¶ 47. But that fact alone misses two fundamental points. First, Defendant has a nonwaivable duty, notwithstanding a default, to avoid conflicts of interest, and it failed to perform that duty. *See* Section III.B.1 *supra*. Second, Defendant erroneously conflates the lower-case term "default" in the TIA with the uppercase "Event of Default" in the PSAs to reach the conclusion that third parties

generally must package and deliver to Defendant's door-step an Event of Default before Defendant

has any duty whatsoever to act.[17] Defendant's Memo pp. 33-34.

> The TIA provides:
>
> The indenture trustee shall exercise in case of ***default*** (as such term is defined in such indenture) such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

15 U.S.C. §§ 77ooo(c) (emphasis added). The "Indentures," which Defendant concedes may also

be the PSAs, use both uppercase "Event of Default" and lowercase "default," which is the term

used in the TIA.

The term "default" should be given its ordinary meaning and is not the same as an "event

of default." *Trust for the Certificateholders of the Merrill Lynch Mortgage Pass-Through*

*Certificates Series 1999-C1 v. Love Funding Corp.*, No. 04 Civ. 9890, 2005 WL 2582177

(S.D.N.Y. Oct. 11, 2005). *Love Funding* was a case brought by certificate-holders in a commercial

backed securities trust, which was structured similarly to the RMBS Trusts at issue in this case.

*Id.* In it, the defendant argued that the terms "default" and "event of default" had the same

definition, because the defendant wished to avoid paying the higher interest required for losses

caused by an "event of default." The *Love Funding* court held that "default" and "event of default"

were different and that the term "default" in a mortgage loan purchase agreement should be given

its plain and ordinary meaning, because "the MLPA distinguishes between a default and the

declaration of an event of default." Id. at *6.

Likewise, here, in CSMC 2006-8 PSA § 8.04 regarding waiver, for example, the term

"default" appears alongside, and separate from, the term "Event of Default" to describe a

---

[17] Plaintiff alleges that both an "Event of Default" and a "default" occurred.

subcategory of general "default."[18] While the PSA does not specifically define "default," it is clear that it includes not only Events of Default but also any default on any mortgage loan in the Trust. The occurrence of a default in turn triggers Defendant's statutory duty to act "as a reasonable person" and take all steps necessary to enforce the Seller's, Originator's and Master Servicer's representations and warranties, including seeking the repurchase of bad loans. Finally, Defendant's conflation of "Event of Default" and "default" is nonsensical because the PSA's Event of Default provision concerns claims against a Servicer or Master Servicer, not on claims against the Trustee. *See* Section III.A *supra*. For each of these reasons, Plaintiff adequately alleges facts sufficient to prove that a default occurred and that Defendant, the trustee, had heightened obligations to protect Plaintiff, its beneficiary.

Defendant also argues that even if there was a "default" as required by the TIA, Plaintiff has failed to allege that Defendant had "actual" knowledge of that default. Defendant's Memo, p. 34. Plaintiff does allege actual knowledge by Defendant. *See* Complaint ¶ 32 ("Defendant *has notice* of substantial evidence of breaches of representations and warranties in the underlying documents for the Trusts") (emphasis added). Regarding a different paragraph, which Defendant repeatedly points out contains the word "likely," Defendant wrongly argues that the word "likely" is used to describe the quality of Defendant's knowledge. It is not. Plaintiff alleges *actual* knowledge of *likely* breaches. Complaint ¶ 3 ("Defendant *is aware* of likely breaches of representations and warranties contained in the Trust documents. . . ." (emphasis added)).

---

[18] PSA § 8.04 provides: "The Holders representing at least 66% of the Voting Rights of Certificates affected by a default or Event of Default hereunder may waive any default or Event of Default; provided, however, that (a) a default or Event of Default under clause (g) of Section 8.01 may be waived, only by all of the Holders of Certificates affected by such default or Event of Default. . ." Section 8.01(g) provides: "

Moreover, the requirement for actual knowledge is limited, pursuant to the terms of the PSA, to "Events of Default."

Furthermore, Plaintiff alleges that Defendant or its agent also had a duty to possess the mortgage files, *see* Complaint ¶ 37, which in and of themselves, contain proof of breaches of representations and warranties, *see* Complaint ¶¶ 56-61. It cannot be the law that some third party must provide Defendant with written notice of the contents of files in Defendant's own possession. Finally, as set forth in greater detail in Section III.C.2, Defendant's actual or imputed knowledge required the Trustee to take further action, which it failed to do. *MASTR Asset Backed Sec. Trust 2006-HE3*, 2012 WL 4511065, at *6-7.

Having alleged that Defendant had actual knowledge of both servicer misconduct and the fact that the originators and sellers breached representations and warranties in the governing documents for the Trust, under New York law, it is now an issue of fact whether that actual knowledge strips Defendant of the protections that it argues flow from the so-called "Event of Default" section in the PSA. The issue whether a trustee's *actual* knowledge of facts that could support a default or "Event of Default" strips a trustee of protection under any exculpatory language from a PSA that requires a third-party to provide the trustee with written notice of the default is an issue of fact for trial and cannot be the basis for a motion to dismiss. *BNP Paribas Mortg. Corp.* 778 F. Supp. 2d at 396-97.

2.      Count II: Breach of the Duty of Loyalty

Count II of the Complaint is premised on Defendant's breach of its extra-contractual duty to avoid conflicts of interest, which resulted in its failure to take any action to protect Plaintiff and other Certificateholders from robo-signing and other servicing-related misconduct, in addition to origination-based breaches of representations and warranties. Defendant's argument that it owes

no such duty, *see* Defendant's Memo § III.D.4, is unavailing for the reasons set forth in Section III.B *supra*.

3.     Count III: Breach of Fiduciary Duty

Count III of the Complaint is an alternative pleading of Defendant's breach of its extra-contractual duty to avoid conflicts of interest, and otherwise identical to Count II. Defendant's argument that it owes no such duty, *see* Defendant's Memo § III.D.3), therefore, also is unavailing for the reasons set forth in Section III.B, *supra*.

Defendant also argues that "these claims" should be dismissed because they are "duplicative of the breach of contract claim in Count IV.…" Defendant's Memo, pp. 35–36. This is incorrect. As discussed below, Count IV pertains to Defendant's breach of its express duty to hold the loans for the benefit of the Plaintiff and other Certificateholders – not the breach of its extra-contractual duty to avoid conflicts of interest. *See* Section III.D.4 *infra*. In any event, even if Count III were construed as an alternative version of Count IV, pleading causes of action in the alternative is perfectly appropriate. "At the pleading stage, Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims.… Rule 8(d) … permit[s] plaintiffs to allege claims in the alternative." *Kapsis v. Am. Home Mortg. Servicing Inc.*, 2013 U.S. Dist. LEXIS 39569, *64 (E.D.N.Y. Feb. 14, 2013).[19]

---

[19]     *See also CPS Medmanagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 2013 U.S. Dist. LEXIS 49518, 50 n.18 (D.N.J. Apr. 4, 2013) (pleading alternative tort and contract theories permissible); *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 414 (S.D.N.Y. 2010) ("At this stage, the Court views Plaintiffs' tort claims as alternative pleadings in the event that their contract claims fail"); *Peter Kiewit Sons' Co. v. Summit Constr. Co.*, 422 F.2d 242, 270-271 (8th Cir. 1969) ("it was permissible for Summit to plead in good faith tort and breach of contract as alternative theories of recovery.… [Rule 8(d)(2)] clearly permits setting forth two or more statements of a claim alternately or hypothetically and stating as many separate claims as may exist regardless of consistency").

The "contrary" cases cited by Defendant are distinguishable. *G.D. Searle & Co. v. Medicorp Commc'ns, Inc.*, 843 F. Supp. 895, 899 (S.D.N.Y. 1994), involved a motion for summary judgment, not a motion to dismiss. In *Ellington*, the court determined that the plaintiff's claim for breach of fiduciary duty was a restatement of a breach of contract claim, but did not invalidate it on this basis alone. Instead, the court had already determined that the plaintiffs had not "adequately alleged the existence and breach of a fiduciary duty." 837 F. Supp. 2d at 193. *Grund v. Del. Charter Guar. & Trust Co.*, 788 F. Supp. 2d 226, 251-252 (S.D.N.Y. 2011), pertains to a claim for unjust enrichment subject to particular common law that "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the subject matter." This same law does not apply to the breaches at issue here.

Thus, Plaintiff is entitled to alternatively plead Defendant's breach of its duty to avoid conflicts of interest but, again, Count IV actually alleges a different breach than Count III.

4.    Count IV: Breach of Contract

In Count IV, Paragraphs 151–56 of the Complaint, Plaintiff alleges that Defendant breached its contractual duty to "hold the loans for the benefit of the Certificateholders." Defendant argues that this Count is "unintelligible" and "inconsistent," *see* Defendant's Memo § II.D.2, p. 35, but it is really quite simple. Defendant's contractual duty to hold the loans for the benefit of the Certificateholders is detailed in Paragraphs 34–40 of the Complaint. Because Defendant took no action to protect Plaintiff and other Certificateholders from Wells Fargo's robo-signing and other servicing misconduct, in addition to breaches of representations and warranties concerning origination of the loans, it breached its duty to hold the loans for the benefit of the Certificateholders. Complaint ¶¶ 154–155.

Defendant's argument that this cause of action is contradicted by earlier statements in the complaint, *see* Defendant's Memo § II.D.2, p. 35, is unavailing. The allegedly inconsistent Paragraph 21 of the Complaint says only that "the Trustee holds the Trust corpus for the benefit of the Certificateholders", plainly describing a Trustee's duties in a standard RMBS securitization. In this case, Defendant obviously did <u>not</u> hold the loans for the benefit of Plaintiff and other Certificateholders, as alleged in Count IV.[20]

Thus, Count IV states a cause of action for breach of Defendant's contractual duty to hold the loans for the benefit of Plaintiff and other Certificateholders.

5.    <u>Count V: Negligence</u>

In Count V, Paragraphs 157–161 of the Complaint, Plaintiff alleges that Defendant failed to perform its ministerial duties with due care. Defendant argues that this claim merely "repackages the breach of contract claims," *see* Defendant's Memo § II.D.5, p. 38, but Defendant is mistaken. As explained above in Section II.B.1, one of the two "extra-contractual pre-default duties" imposed on all trustees, in addition to the duty to avoid conflicts of interest, is that "an indenture trustee may be liable in tort for failure to perform basic non-discretionary ministerial tasks." *LNC Invs., Inc. v. First Fid. Bank, N.A.*, 935 F. Supp. 1333, 1347 (S.D.N.Y. 1996). In *Ellington Credit Fund,* 837 F. Supp. 2d at 192, the court also recognized this extra-contractual duty to "perform all basic, non-discretionary, ministerial tasks with due care."

Defendant cites *Ellington* for a general holding that "merely charging a breach of a 'duty of care' … does not, without more, transform a simple breach of contract into a tort claim." *Id.* at 203. However, this holding came only <u>after</u> the court had already ruled that the plaintiff had failed

_____

[20]    The complaint must be construed "as a whole, not parsed piece by piece." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

to allege a breach of a basic non-discretionary ministerial task. *Id*. at 193. Thus, the general proposition cited by Defendant is inapplicable. Plaintiff is not repackaging a breach of contract claim as a negligence claim – it is claiming breach of Defendant's extra-contractual duty of due care in performing a basic, non-discretionary ministerial task – a duty recognized by *Ellington* and many other courts (*see* Section II.B.1 *supra*).

The Complaint provides several examples of this breach. Plaintiff alleges that Defendant was required to execute certain documents in order to foreclose upon property, but rather than properly exercising this right, Defendant allowed LPS, DOCX, MERS, Inc., or Wells Fargo to sign such documents, and allowed employees of other companies to sign documents as officers of Defendant under oath, outside the presence of a notary. Complaint ¶ 160. These allegations more than meet the requirements of *Twombly* and *Iqbal* to state a plausible cause of action for breach of Defendant's duty of due care.[21]

### 6. Count VI: Injunctive Relief

Defendant attacks Plaintiff's claim for injunctive relief on two grounds: 1) that it is not a stand-alone claim; and 2) that Plaintiff had not alleged an adequate basis for such relief. As to the first, Defendant's argument is semantic and without consequence. If Defendant desires that Plaintiff graft Count VI into the Wherefore clauses in its other claims, Plaintiff will gladly grant Defendant this pyrrhic victory, so long as Plaintiff is granted leave to re-plead. As to the assertion

---

[21]     Defendant argues that "Plaintiff cites no authority" for the allegation that Defendant was required to execute certain documents associated with the Trusts, but Defendant is once again attempting to impose a higher threshold than required by *Twombly* and *Iqbal*. Courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010). In addition to taking all factual allegations as true, courts must still draw all inferences in favor of the plaintiff, *Jones v. Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008), who is entitled to the "benefit of imagination." *Twombly*, 550 U.S. at 563. Complaints must be construed liberally in plaintiffs' favor (*see, e.g., Jones*, 521 F.3d at 559).

that Plaintiff has failed to allege "irreparable harm," Defendant is wrong. A party is entitled to injunctive relief when "it is impossible, or difficult, to ascertain or determine the extent of the injury which may flow from a continuance of the wrong, an injunction is the proper remedy." *Poughkeepsie Gas Co. v. Citizens Gas Co.*, 89 N.Y. 493, 497 (1882); *accord State v. Johnson*, 45 A.D.3d 1016, 1020 (3rd Dep't 2007); *see also Crocker v. Manhattan Life Ins. Co.*, 61 App. Div. 226, 230 (1st Dep't 1901).

Here, Plaintiff has alleged that Defendant allowed the RMBS Trusts at issue to be tainted with robo-signed documents and incomplete loan files. Further, Plaintiff has alleged that the harm caused by Defendant's acts is ongoing and thus impossible to fully ascertain. Complaint ¶ 128. Thus, the appropriate remedy, should Plaintiff prevail in whole or in part, is for the Court to enter an order: (1) enjoining Defendant from allowing any more robo-signed documents to be executed with regard to the mortgages backing Plaintiff's investment; (2) requiring Defendant to provide a full accounting of the inadequate, forged and robo-signed documents that have poisoned Plaintiff's investments; and (3) requiring Defendant to take all steps necessary to make sure the loan files that correspondent to Plaintiff's investments conform with all state and federal law. To the extent the Court concludes Plaintiff has not adequately alleged its right to seek this injunction for Defendant's appalling inaction in the face of massive fraud and wrongdoing, Plaintiff would ask the Court to grant it leave to re-plead.

7.  Count VII: Breach of Implied Covenant of Good Faith and Fair Dealing

In Count VII, Paragraphs 165–173 of the Complaint, Plaintiff alleges that Defendant breached its covenant of good faith and fair dealing because of its conflict of interest. Defendant argues that this Count must be dismissed "because it is duplicative of Plaintiff's breach of contract claim." Defendant's Memo § II.D.7, p. 39. Generally speaking, Defendant is correct that a claim

for breach of the implied covenant of good faith and fair dealing that is purely duplicative of a breach of contract claim will not stand. However, Plaintiff may simultaneously plead these theories when the "implied covenant theory [is based] on allegations that are distinct from the factual predicate for its contract claims." *JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, 2009 U.S. Dist. LEXIS 9207, at **16 (S.D.N.Y. Feb. 9, 2009). "[A] plaintiff adequately states an implied covenant claim by alleging conduct that subverts the contract's purpose without violating its express terms." *Id*.

This is the situation at issue here. Defendant failed to hold the loans for the benefit of the Certificateholders, *see* Complaint ¶ 169, <u>because of</u> its conflict of interest, *see id.* at ¶ 170. Defendant's breach of its <u>extra</u>-contractual duty to avoid conflicts of interest is not an express breach of contract in and of itself, but rather, contributed to the express breach of contract. Therefore, Count VII for breach of the covenant of good faith and fair dealing is separate and distinct from Count IV for breach of express contract. Count VII is actually an alternative pleading of Count II (breach of duty of loyalty) and Count III (breach of fiduciary duty) because all are premised on Defendant's breach of its extra-contractual duty to avoid conflicts of interest, and it is perfectly acceptable to plead this theory in the alternative as discussed in Section II.D.3 above.

Defendant also argues that absent an ongoing Event of Default, the PSAs bar all implied covenants or obligations against Trustee. This argument fails for two reasons. First, Wells Fargo's misconduct indeed resulted in an Event of Default. (Complaint ¶¶ 47, 132, 133). Second, under New York law, even a merger clause such as the one purportedly contained in the PSAs "does not prevent a court from inferring a covenant of good faith and fair dealing." *SNS Bank, N.V. v. Citibank, N.A.*, 777 N.Y.S.2d 62, 65 (App. Div. 1st Dep't 2004) (*citing Havel v Kelsey-Hayes Co.*, 83 A.D.2d 380, 384 (4th Dep't 1981)).

Thus, Count VII clearly states a viable cause of action for breach of Defendant's implied covenant of good faith and fair dealing.

CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.[22]

Respectfully submitted,

DATED:        October 29, 2013                 /s/ William I. Strasser, Esq.
                                               William I. Strasser (WS6002)
                                               David Mayland (DM1225)
                                               STRASSER & ASSOCIATES, P.C.
                                               7 East Ridgewood Ave.
                                               Paramus, New Jersey 07562
                                               Tel: 201.445.9001
                                               Fax: 201-445-1188

                                               Talcott J. Franklin
                                               (Admitted *Pro Hac Vice*)
                                               TALCOTT FRANKLIN P.C.
                                               208 N. Market St., Suite 200
                                               Dallas, TX 75202
                                               Tel: 214.321.3838

                                               Derek Witte
                                               (Admitted *Pro Hac Vice*)
                                               TALCOTT FRANKLIN P.C.
                                               40 Pearl Street NW, Suite 924
                                               Grand Rapids, MI 49503
                                               Tel: 616.719.3106

                                               Paul D. Snyder
                                               (*Pro Hac Vice* Application To Be Filed)
                                               TALCOTT FRANKLIN P.C.
                                               13401 Mission Road, Suite 207
                                               Leawood, KS 66209
                                               Tel: 913.948.7480
                                               Fax: 913.440.0724

---

[22] In the event the Court grants the Motion in whole or in part, Plaintiff respectfully requests they be given leave to file an amended complaint.

# CERTIFICATE OF SERVICE

**[insert]**