UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VNB REALTY, INC.,** a wholly owned subsidiary of Valley National Bank,<br><br>    **Plaintiff,**<br><br>  v.<br><br>**U.S. BANK, N.A.,**<br><br>    **Defendant.** | Civ. No. 2:13-04743 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

  Plaintiff VNB Realty, Inc. ("VNB") owns an interest in two trusts holding residential mortgage backed securities. Defendant U.S. Bank, N.A. ("U.S. Bank") served as the indenture trustee for both trusts. In a seven-count Complaint, VNB alleges that U.S. Bank knew about wrongdoing in both trusts but failed to notify interested parties because of a conflict of interest. U.S. Bank moves to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, U.S. Bank's motion is **GRANTED IN PART**, and **DENIED IN PART**.

**I. FACTS**

  The Complaint alleges as follows: VNB is a real estate investment trust and a wholly owned subsidiary of Valley National Bank. Compl. ¶ 6. On October 20, 2006, VNB purchased certificates in the CSMC Mortgage Backed Trust 2006-8, CSMC Mortgage-Backed Pass-Through Certificates, Series 2006 ("the CSMC Trust"). *Id.* ¶ 22. At the time of purchase, the CSMC Trust certificates had a par value of $21,637,000. *Id.*. Since the purchase, VNB has taken an impairment charge on its CSMC Trust certificates in the amount of $1,024,253.00. *Id.* ¶ 24.

  On January 30, 2007, VNB purchased certificates in the MASTR Alternative Loan Trust 2007-1, Mortgage Pass-Through Certificates, Series 2007-1 (the "MALT Trust"). *Id.* ¶ 27. At the time of purchase, the MALT Trust certificates had a par value of approximately $30 million. *Id.* Since the purchase, VNB has taken an impairment charge on its MALT Trust certificates in the amount of $2,555,088.00. *Id.* ¶ 28.

Both the CSMC Trust and the MALT Trust (together "the Trusts") are composed of residential mortgage backed securities ("RMBS"). *Id.* ¶ 1. The securitization process begins when a borrower gets a mortgage loan from a lender, called an "Originator." *Id.* ¶ 12. The originator sells the loan to a "Seller," who sells the loan to a "Depositor." *Id.* ¶ 14. The Depositor then places the loan in trusts governed by a "Pooling and Servicing Agreements" ("PSAs"). *Id.* ¶¶ 14-15. Once loans are placed into a trust, borrowers make their payments to the trust through a "Master Servicer," which sometimes involves additional "Servicers" in the process. *Id.* ¶ 16. After the Master Servicer collects loan payments from borrowers, the Master Servicer transfers the payments to a "Trustee." *Id.* ¶ 19. The Trustee then distributes the payments to the trust's beneficiaries, referred to as "Certificateholders." *Id.* ¶ 19.

Countrywide Home Loans and Wells Fargo were among the Originators of the mortgages in the Trusts at issue in this case. *Id.* ¶¶ 53-54. Wells Fargo was the Master Servicer for both of the Trusts, and several other banks acted as Servicers. *Id.* ¶ 17. Finally, Defendant U.S. Bank was the Trustee for both Trusts. *Id.* ¶ 19.

VNB alleges that the Trusts were tainted by "robo-signing," which the Complaint defines as "the practice of signing mortgage assignments, satisfactions, and other mortgage-related documents in assembly-line fashion, often with a name other than the affiant's own, and swearing to personal knowledge of facts which the affiant has no knowledge." *Id.* ¶ 69. VNB alleges that Wells Fargo, the Master Servicer for the Trusts, and U.S. Bank, the Defendant, filed robo-signed documents in the Trusts. *Id.* ¶ 83. VNB further asserts that because U.S. Bank was engaging in robo-signing practices outside of the Trusts, U.S. Bank had a conflict of interest that "made it impossible for [U.S. Bank] to prevent, remedy, or address the robo-signing within the Trusts at issue." *Id.* ¶ 88.

VNB also alleges that Countrywide and Wells Fargo, two of the Originators for the Trusts, carried out their origination responsibilities recklessly and negligently. *Id.* ¶¶ 53-54. Here, VNB points to a June 7, 2010 Federal Trade Commission complaint alleging that Countrywide "knowingly originated risky loans." *Id.* ¶ 55. VNB claims that "[d]espite pervasive evidence of breaches of the representations and warranties relating to the origination of the loans in the Trusts, U.S. Bank failed to nose to the source, provide notice of, and address these breaches." *Id.* ¶ 55. VNB also claims that U.S. Bank knew or should have known about an Allstate Insurance Company review of the mortgage loans in the CSMC Trust that uncovered "significant and material discrepancies between statements contained in the Prospectus Supplement and actual loan data." *Id.* ¶¶ 56-61. VNB claims that in the wake of the Allstate review, U.S. Bank "took no action to further investigate or give notice of the breaches on behalf of the Certificateholders in the Trust." *Id.* ¶ 61. Furthermore, VNB alleges that U.S. Bank breached its duties by failing to ensure that mortgage documents relating to the Trusts were executed properly. *Id.* ¶ 66.

Finally, VNB alleges that by at least October 19, 2011, problems in the mortgage industry had become so widespread that U.S. Bank was imputed with knowledge of the robo-signing and loan origination issues documented in the Complaint. *Id.* ¶ 123.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

## III. DISCUSSION

The Complaint contains seven counts. Count I is a claim for violation of the Trust Indenture Act. Count II is a claim for breach of the duty of loyalty. Count III is a claim for breach of fiduciary duty. Count IV is a claim for breach of contract. Count V is a claim for negligence. Count VI is a claim for injunctive relief. Count VII is a claim for breach of the implied covenant of good faith and fair dealing. U.S. Bank moves to dismiss all counts. In support of its motion, U.S. Bank makes two general arguments. First, U.S. Bank argues that suit is barred by "no action clauses" in the PSAs governing the Trusts (together "the PSAs"). Second, U.S. Bank argues that each of the Complaint's seven counts fails to state a claim upon which relief can be granted. The arguments will be considered in turn.

### A.     The No Action Clauses

The PSAs for both Trusts contain "no-action" clauses that prohibit litigation unless certificateholders first demand that a specified party initiate a lawsuit. In the case of the CSMC Trust, the no action clause requires certificateholders to request that Wells Fargo bring suit on their behalf. CSMC Trust PSA, § 12.07, ECF No. 9-4. In the case of the MALT Trust, the no action clause requires certificateholders to request that either Wells Fargo or U.S. Bank bring the suit. MALT Trust PSA, § 11.08, ECF No. 9-5. U.S. Bank argues that the Court should dismiss the Complaint under the no action clauses because VNB failed to demand that Wells Fargo or U.S. Bank file the instant suit. U.S. Bank's argument is not persuasive.

No action clauses are "strictly construed," *Cruden v. Bank of New York*, 957 F.2d 961, 968 (2d Cir. 1992), but they are not absolute. For example, a no-action clause might require certificateholders to request that a specified party bring suit against itself. Courts refuse to enforce no action clauses in these "absurd" situations. *Cruden*, 957 F.2d at 968. Here, it would have been absurd to demand that U.S. Bank bring the instant suit against itself. *See Cruden*, 957 F.2d at 968. Similarly, it would have been absurd for VNB to demand that Wells Fargo bring the instant suit. VNB is alleging that U.S. Bank harmed the Trusts because U.S. Bank knew or should have known about Wells Fargo's robo-signing but failed to take corrective action. Confronted with similar facts in another suit brought against U.S. Bank, a district court in the Western District of Missouri held that the no-action clause did not apply. *Commerce Bank v. U.S. Bank Nat. Assn.*, No. 13-cv-517 (W.D. Mo. Nov. 18, 2013), ECF No. 53 ("*Commerce*"). *Commerce* is persuasive. Accordingly, to the extent U.S Bank's motion to dismiss rests on VNB's failure to comply with the no action clauses, U.S Bank's motion is **DENIED**.

### B.     Counts I-VII

#### 1.     Count I: Trust Indenture Act

In Count I, VNB alleges that U.S. Bank violated two sections of the Trust Indenture Act, 15 U.S.C. § 77ooo(b) ("Section 77ooo(b)") and 15 U.S.C. § 77ooo(c) ("Section 77ooo(c)").[1] Compl. ¶¶ 129-133. VNB has stated a claim under both Section 77ooo(b) and Section 77ooo(c).

Section 77ooo(b) provides that indenture trustees must, within 90 days, provide "notice of all defaults known to the trustee." VNB claims that U.S. Bank violated Section 77ooo(b) when it failed to provide the required notice of defaults. U.S. Bank maintains that VNB's claim is deficient for two reasons. First, U.S. Bank argues that VNB was not required to provide notice of a default under Section 77ooo(b) because

---

[1] While Title 15, Section 77ooo of the United States Code is entitled "Duties and Responsibilities of the Trustee," the statute actually refers to a particular type of trustee called an "indenture trustee." There is no dispute that U.S. Bank was the indenture trustee for both Trusts.

there was no "Event of Default" under the PSAs. Second, U.S. Bank argues that even if there was a default for purposes of Section 77ooo(b), VNB has not pled actual knowledge of the default.

U.S. Bank's first argument fails. Section 77ooo(b)'s notice duty is triggered by a "default," not something called an "Event of Default," which is a defined term in PSAs. *See Policemen's Annuity & Benefit Fund v. Bank of Am., NA*, 943 F. Supp. 2d 428, 441 (S.D.N.Y. 2013) ("[Section 77ooo(b)] speaks of "defaults", without limiting that term to the defaults defined in the PSA."). Under Section 77ooo(b), a default is the "omission or failure of a legal or contractual duty." *Id.* (internal quotations and citations omitted). VNB alleges the omission or failure of a legal duty. Specifically, it alleges that representations and warranties in the underlying trust documents were breached. Compl. ¶ 55. The Complaint also alleges that an Allstate review of the mortgage loans in the CSMC Trust found "significant and material discrepancies between statements contained in the Prospectus Supplement and actual loan data." *Id.* ¶ 56. Contrary to U.S. Bank's argument, VNB's allegations are sufficiently detailed to survive a motion to dismiss. *See Policemen's Annuity*, 943 F. Supp. at 442 ("At the pleading stage, plaintiffs cannot be required to identify breaches of representations and warranties with respect to the individual loans in the specific trusts.").

U.S. Bank's additional argument—the VNB failed to plead the knowledge required by Section 77ooo(b)—also fails. It does not appear that any court has ruled on whether the term "knowledge" in Section 77ooo(b) means "actual knowledge" or constructive knowledge. But even the Court were to assume that "knowledge" means actual knowledge, VNB has pled actual knowledge. The Complaint states that U.S. Bank knew or should have known about Allstate's study of the CSMC Trust, *id.* ¶ 61, and that "by at least October 19, 2011, problems in the mortgage industry had become so widespread that U.S. Bank was imputed with knowledge of the robo-signing and loan origination issues documented in the Complaint," *id.* ¶ 123. The Complaint also alleges that U.S. Bank was robo-signing documents in the Trusts. *Id.* ¶ 83. Taking these allegations as true, as the Court must on a motion to dismiss, it is plausible that U.S. Bank had actual knowledge of defaults in both Trusts. Accordingly, to the extent that Count I alleges a violation of Section 77ooo(b), the Court will **DENY** U.S. Bank's motion to dismiss.

Next, the Court turns to VNB's Section 77ooo(c) claim. Section 77ooo(c) provides that "[t]he indenture trustee shall exercise in case of **default (as such term is defined in such indenture)** . . . the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs." (emphasis added). Because the PSAs in this case (which the parties equate with indentures for purposes of the instant motion) do not define the term "default," the term must be defined based on the parties' intent at the time they signed the indenture. *Semi-Tech Litigation, LLC v. Bankers Trust, Co.*, 353 F. Supp. 2d 460, 481 (S.D.N.Y. 2005). Making that determination requires a factual finding, *id.*, which is inappropriate at the motion to dismiss stage. Accordingly, to the extent Count I alleges a violation of Section 77ooo(c), the Court will **DENY** U.S. Bank's motion to dismiss.

## 2. Counts II and III: Breach of the Duty of Loyalty and Breach of Fiduciary Duty

Count II is a claim for breach of the duty of loyalty. Count III is a claim for breach of fiduciary duty. Both claims are predicated on the breach of an extra-contractual duty to avoid conflicts of interest.

"To state a claim for a breach of fiduciary duties under New York law, a plaintiff must establish: (1) a fiduciary duty existing between the parties; (2) the defendant's breach of that duty; and (3) damages suffered by the plaintiff which were proximately caused by the breach." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 191 (S.D.N.Y. 2011) (internal quotations and citations omitted). "An ordinary trustee generally owes a fiduciary duty to act with undivided loyalty and administer the trust solely in the interests of the beneficiaries." *Id.* However, indenture trustees—like U.S. Bank—"are not subject to the ordinary trustee's duty of undivided loyalty." *Commerce*, slip. op. at 6 (quoting *Mekel v. Cont'l Resources Co.*, 758 F.2d 811, 816 (2d Cir. 1985)). "Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement." *Id.* at 6-7 (quoting *Mekel*, 758 F.2d at 816). An indenture trustee "must consider the interests of the issuer as well as the investors." *Id.* at 7 (quoting *LNC Invs., Inc. v. First Fid. Bank, N.A.*, 935 F. Supp. 1333, 1346-47 (S.D.N.Y. 1996)).

Accordingly, before the occurrence of an "Event of Default"—a term defined in the indenture—indenture trustees owe just two extra-contractual duties: a duty to avoid conflicts of interest and a duty to "perform all basic, non-discretionary, ministerial tasks with due care." *Ellington*, 837 F. Supp. 2d at 191-92. After an "Event of Default," an indenture trustee's "loyalties no longer are divided between the issuer and the investors . . . [and] the indenture trustee's obligations come more closely to resemble those of an ordinary fiduciary, regardless of any limitations or exculpatory provisions contained in the indenture." *Commerce*, slip op. at 7 (quoting *LNC Invs., Inc.*, 935 F. Supp. at 1347).

VNB maintains that because an Event of Default occurred, U.S. Bank was subject to the fiduciary duties of an ordinary fiduciary. However, for purposes of Counts II and III, VNB argues only that U.S. Bank failed to respect its less burdensome, pre-default duty to avoid conflicts of interest. In *Commerce*, an almost identical case involving an alleged conflict of interest on the part of U.S. Bank, the court explained the alleged conflict as follows: "Plaintiffs contend a conflict arose since U.S. Bank was aware of the master servicer engaging in improper actions regarding the servicing and foreclosure of mortgages, [where] U.S. Bank was independently engaging in the same improper actions. As a result of this conflict, Plaintiffs allege U.S. Bank failed to prevent the master servicer's improper actions." *Commerce*, slip op. at 8. The *Commerce* court held that plaintiffs had sufficiently alleged a conflict of interest. As *Commerce*'s analysis is persuasive, the Court rejects U.S. Bank's argument that VNB has only pled a hypothetical, as opposed to a hypothetical conflict of interest. *See* Def.'s Br. at 27 (citing *E.F. Hutton Sw. Props. II, Ltd. v. Union Planters Nat'l Bank*, 953 F.2d 963, 972 (5th Cir.

1992)). The Court also rejects U.S. Bank's argument that VNB has failed to plead any compensable damages. And as for U.S. Bank's argument that VNB fails to establish that VNB would have acted differently absent the alleged conflict of interest, that argument is premature on a motion to dismiss.[2]

Given that *Commerce* provides persuasive authority for finding that VNB has sufficiently pled a conflict of interest, the Court would normally deny the motion to dismiss the breach of fiduciary duty and breach of loyalty claims. However, caselaw from the United States District Court for the Southern District of New York indicates that when it comes to indenture trustees, conflict of interest allegations are properly pled under a negligence cause of action, not a breach of fiduciary duty or breach of loyalty cause of action. *See Ellington*, 837 F. Supp. 2d at 192 (recognizing that an indenture trustee's "pre-default obligations are not construed as 'fiduciary duties,' but as obligations whose breach may subject the trustee to 'tort liability.'") (quoting *AG Capital Funding Partners, L.P.*, 11 N.Y.3d 146, 157 (2008)).[3] Accordingly, the Court will **DISMISS** Counts II and III with prejudice and allows VNB to replead its conflict of interest allegations under a negligence cause of action.

### 3. Count IV: Breach of Contract

Count IV is a claim for breach of contract. New York law governs the contracts at issue in this case, the PSAs. CSMC Trust PSA, § 12.03; MALT Trust PSA, § 11.03. To state a claim for breach of contract under New York law, a plaintiff must plead "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Commerce*, slip op. at 9 (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). As the *Commerce* court noted, a plaintiff alleging a breach of contract under New York law must identify the provisions of the contract that were allegedly breached. *Id.* (citing *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001)).

In Count IV, VNB claims that U.S. Bank breached contractual duties to hold loans for the benefit of certificateholders. In support of its argument, VNB cites Section 2.01 of both PSAs, which provides that depositors will convey various interests to the Trustee "in trust for the benefit of the certificateholders." CSMC PSA § 2.01; MALT PSA § 2.01. The language in Section 2.01 is highly general. Other provisions of the PSAs set

---

[2] U.S. Bank argues that VNB has only alleged a conflict of interest related to robo-signing, not with respect to breaches of representations and warranties. The Court disagrees. Counts II and III state that U.S. Bank's alleged robo-signing conflict of interest prevented it from acting to protect the certificateholders. The Court finds it proper to allow discovery on the question of whether the alleged conflict of interest prevented U.S. Bank from protecting certificateholders from alleged breaches of representations and warranties.

[3] VNB takes the position that prior to an event of default, U.S. Bank had an additional extra-contractual duty to investigate (i.e. to "nose to the source") problems with the Trust assets. VNB does not cite any binding or persuasive caselaw. Opp. Br. at 23, ECF No. 16. As such, the Court rejects VNB's argument.

forth specific duties that explain how U.S. Bank is to perform its role as a Trustee, and VNB has not identified any specific duty that was breached. Like the *Commerce* court, which dismissed a similar breach of contract claim, *Commerce*, slip op. at 9, the Court will **DISMISS** Count IV **WITH PREJUDICE**.

        4.      Count V: Negligence

Count V is a claim for negligence. As set forth in Section III.B.2, U.S. Bank had a tort duty to "perform all basic, non-discretionary, ministerial tasks with due care." *Ellington*, 837 F. Supp. 2d at 191-92. VNB alleges that U.S. Bank "was required to execute certain documents associated with the Trust when exercising its right to foreclose on a property." Compl. ¶ 159. VNB further alleges that U.S. Bank failed to execute these documents with due care, frequently allowing employees of other companies to sign the documents as if they were U.S. Bank officers. *Id.* Like the *Commerce* court, this Court finds that VNB has sufficiently pled a negligence claim. The Court it will **DENY** the motion to dismiss Count V.

        5.      Count VI: Injunctive Relief

In Count VI, VNB seeks an injunction prohibiting U.S. Bank from engaging in the allegedly improper conduct detailed in the Complaint. U.S. Bank argues, correctly, that there is no standalone cause of action for an injunction. *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010) (citations omitted) ("Injunction is not a separate cause of action; it is a remedy."). Accordingly, the Court will **DISMISS** Count VI **WITH PREJUDICE**. However, just because there is no standalone cause of action for injunction does not mean that VNB has failed to plead an entitlement to injunctive relief. Where a plaintiff's damages are purely monetary, a plaintiff might be entitled to an injunction if its damages are difficult to calculate. *State v. Johnson*, 45 A.D.3d 1016, 1020 (N.Y. App. Div. 2007). VNB argues that its damages are difficult to measure. As such, VNB might be entitled to injunctive relief. VNB may file an amended pleading seeking injunctive relief as a remedy for the surviving counts.

        6.      Count VII: Breach of the Implied Covenant of Good Faith and Fair Dealing

Count VII is a claim for breach of the implied covenant of good faith and fair dealing. VNB contends that the PSAs contained an implied duty on the part of U.S. Bank to "hold the loans for the benefit of the plaintiff and other Certificateholders." Compl. ¶ 167. This is exactly what VNB alleges in its breach of contract claim. "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Accordingly, the Court will **DISMISS** Count VII **WITH PREJUDICE**.

## IV. CONCLUSION

For the foregoing reasons, U.S. Bank's motion to dismiss is **GRANTED IN PART**, and **DENIED IN PART**.  Counts II, III, IV, VI, and VII are **DISMISSED WITH PREJUDICE**.  Counts I and V survive.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 23, 2013**