## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VNB REALTY, INC., a wholly owned subsidiary of Valley National Bank, | Civ. No. 2:13-4743 (WJM) |
| Plaintiff, | OPINION |
| v. | |
| U.S. BANK NATIONAL ASSOCIATION and WELLS FARGO BANK, NA. | |
| Defendant. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

In this action, VNB Realty Inc. ("VNB") accuses U.S. Bank National Association ("U.S. Bank") and Wells Fargo Bank, NA ("Wells Fargo") of wrongdoing in connection with the administration of two trusts consisting of residential mortgage loans. This matter comes before the Court on a motion to dismiss filed by Wells Fargo and a partial motion to dismiss filed by U.S. Bank. For the reasons stated below, both motions will be **GRANTED**.

### I.   BACKGROUND

The following facts are alleged in VNB's second amended complaint ("SAC"). VNB is a Real Estate Investment Trust incorporated under New Jersey law with its headquarters and principal place of business in Wayne, New Jersey. SAC at ¶6. It owns beneficial interests known as certificates in trusts holding mortgage backed securities ("RMBS"). *Id.* at ¶1. Specifically, VNB holds certificates (hereinafter, "the Certificates") in the following two trusts (collectively, "the Trusts") that are the subject of this lawsuit: CSMC Mortgage-Backed Trust 2006-8 ("CSMC 2006-8") and MASTR Alternative Loan Trust 2007-1 ("MALT 2007-1"). *Id.* at ¶1. The CSMC 2006-8 Prospectus Supplement represents that the CSMC 2006-8 Trust consists of two pools of 1,468 first-priority fixed-rate residential mortgage loans. *Id.* at 14. The MALT 2007-1 Prospectus Supplement represents that MALT 2007-1 consists of 656 fixed-rate, closed-end residential mortgage loans.

U.S. Bank is a commercial bank headquartered in Cincinnati Ohio.[1]  U.S. Bank serves as the Trustee for both of the Trusts.  *Id*. at ¶7.  Wells Fargo – a national banking association headquartered in Sioux Falls, South Dakota – is the Servicer or Master Servicer of the Trusts.  *Id*. at ¶8.[2]  The establishment and administration of each Trust is governed by a "Pooling and Service Agreement" ("PSA").  The Master Servicer – Wells Fargo – is responsible for collecting loan payments from mortgage borrowers and transferring those payments, less allowable deductions to the Trustee, which in this case is U.S. Bank.  The Trustee then distributes the payments to the beneficiaries of the trusts, called "Certificateholders."  In this case, VNB was a Certificateholder in both Trusts.  *Id*. at ¶¶ 20-24.

The SAC alleges that U.S. Bank has a duty to protect the Trusts corpuses for the benefit of the Certificateholders.  *Id*. at ¶ 9.  Of particular relevance to this matter is U.S. Bank's alleged duty to oversee the actions of the Master Servicer, Wells Fargo.   As Master Servicer for the Trusts, Wells Fargo is required to ensure that its mortgage servicing practices – including collection procedures – conform to those of prudent lending institutions that service similar loans.  *Id*. at ¶ 47.  Additionally, the PSAs provide that "[s]ervicer shall act in a manner consistent with this Agreement and with customary and usual standards of practice of prudent mortgage loan master servicers."  *Id*. at ¶ 52.

The SAC alleges that Wells Fargo routinely flouted its obligations by engaging in "robo-signing," a practice in which mortgage assignments, satisfactions and other mortgage-related documents are signed "in assembly-line fashion, often with a name other than the affiant's own, and swearing to personal knowledge of facts of which the affiant has no knowledge." *Id*. at ¶ 78.  According to the SAC, U.S. Bank was fully aware of this improper practice, but failed to notify the Certificateholders as required by the PSAs.  Moreover, the SAC alleges that because "U.S. Bank was itself engaged in massive robo-signing with regard to other deals," it faced a conflict of interest "that made it impossible for [U.S. Bank] to prevent, remedy, or address the robo-signing within the Trusts at issue." *Id*. at ¶ 97.  U.S. Bank therefore failed "to prevent the Master Servicer from engaging in illicit and and/or illegal acts with respect to loans in the Trusts…" *Id*. at ¶ 131.

The SAC alleges that Defendants' wrongdoing has resulted in VNB taking impairment charges on its MALT 2007-1 Certificates in the amount of $2,555,088 and impairment charges on its CSMC 2006-8 Certificates in the amount of $1,024,253.  *Id*. at ¶ 136.

---

[1] U.S. Bank's principle place of business is in Minnesota.  SAC at ¶7.

[2] In light of the background discussion it provided in a prior opinion issued in this matter, the Court assumes familiarity with the securitization process that resulted in the creation of the Trusts.  *See VNB Realty, Inc. v. U.S. Bank, N.A.*, No. 2:13-04743 (WJM), 2014 WL 1628441 (D.N.J. Apr. 23, 2014).

VNB filed a complaint in state court against U.S. Bank on May 29, 2013. *See* ECF No. 1-1. U.S. Bank removed the case to federal court on August 7, 2013. *See Id.* U.S. Bank then filed a motion to dismiss the complaint, which this Court granted in part and denied in part. *See* ECF No. 24. After filing an amended complaint, *see* ECF No. 29, VNB filed the SAC, which added Wells Fargo as a defendant. *See* ECF No. 39. The SAC asserts claims for negligence and violations of the Trust Indenture Act against U.S. Bank, and claims for negligence and gross negligence against Wells Fargo. SAC at ¶¶ 138-170.

On June 29, 2015, U.S. Bank filed a partial motion to dismiss seeking dismissal of the Trust Indenture Act Claim. *See* ECF No. 52. On the same date, Wells Fargo filed its own motion to dismiss. *See* ECF No. 53. This opinion addresses both motions.

## II.   DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

### a.   Wells Fargo

As explained above, VNB has asserted tort claims against Wells Fargo, who serves as Master Servicer for both Trusts. Wells Fargo argues that its duties owed to VNB are solely defined by the provisions contained in the PSAs, which means that VNB's extra-contractual tort claims must be dismissed. The Court agrees.

The parties agree that substantive New York law applies to VNB's tort claims against Wells Fargo. Wells Fargo Mot. to Dismiss at 3. New York law provides that in order to plead a tort claim, "a plaintiff must allege an independent duty that 'spring[s] from

circumstances extraneous to, and not constituting elements of, the contract.'" *See, e.g., BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 949 F.Supp.2d 486, 504 (S.D.N.Y. 2013) (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 390 (N.Y. 1987). *See also New York University v. Continental Insurance Co.*, 87 N.Y.2d 308, 316 (N.Y. 1995) ("where a party is merely seeking to enforce its bargain, a tort claim will not lie"). Stated differently, where a defendant is accused of failing to adequately perform contractual duties, it is terms of the contract – not the principles governing tort liability – that will define what duty the defendant owed the plaintiff. *Cf. Ikea North American Services, Inc. v. Northeast Graphics, Inc.*, 66 F.Supp.2d 547, 549 (S.D.N.Y. 1999) ("[T]he policy underlying [the rule] is New York's determination to foster predictability in commercials affairs by limiting the remedies for contractual non-performance to suits for contractual breach.")

Here, VNB fails to allege that Wells Fargo possessed any duty related to the Trusts that existed independently from the PSAs; relatedly, nothing in the SAC demonstrates that Wells Fargo would have owed VNB a duty had the PSAs never existed. Instead, the SAC is replete with references to different provisions of the PSAs that set forth the obligations of Wells Fargo in its role as Master Servicer. *See, e.g.*, SAC at ¶¶ 43, 52, 53. Therefore, New York law bars VNB's tort claims against Wells Fargo.

VNB's arguments to the contrary are unavailing. While VNB agrees that it is a third-party beneficiary of the PSAs, *see* VNB Opp'n to Wells Fargo Mot. To Dismiss at 3, it nonetheless maintains that it may bring its tort claims against Wells Fargo because it was not an actual signatory to the PSAs. However, New York law provides that along with the benefits of third-party beneficiary status – namely, the right to sue under the pertinent agreement – so too come the burdens. Specifically, "[t]hird party beneficiaries generally are subject to the same defenses that the promisor could raise in a suit by the promisee." *Benson v. Brower's Moving & Storage*, *Inc.*, 907 F.2d 310, 313 (2d Cir. 1990). Moreover, at least one court applying New York law has expressly held that a third-party beneficiary to an agreement is not permitted to bring tort claims that do not exist independently from that agreement. *See Ikea North American Services, Inc.*, 66 F.Supp.2d at 549.

Swimming against the tide, VNB argues that it can at least bring tort claims against Wells Fargo concerning MALT 2007-1 because the PSA governing that trust has a limitation on liability clause which includes the following

> [This limitation on liability provision] shall not protect…the Master Servicer…from any liability which would otherwise be imposed by reason of willful misfeasance, bad faith or negligence in the performance of duties hereunder or by reason of reckless disregard of obligations and duties hereunder.

MALT 2007-1 PSA § 6.03. However, that provision merely allows for certain types of liability that "would otherwise be imposed," *i.e.*, liability that would already exist but for the PSA's limitation on liability clause. *See, e.g., Two Farms, Inc. v. Greenwich Ins. Co.*,

993 F.Supp.2d 353, 360 (S.D.N.Y. 2014) ("Courts interpreting contracts pursuant to New York law are required to give each word and phrase in a contract its plain meaning and avoid rendering the terms or provisions of a contract superfluous.") (citations omitted).  In other words, the provision is a rights preserving carve-out; it is not intended to create new rights of action that New York law does not recognize.  Consequently, VNB's tort claims against Wells Fargo are **DISMISSED WITH PREJUDICE**.

### b.  U.S. Bank

U.S. Bank argues that VNB's Trust Indenture Act ("TIA") claim must be dismissed because the TIA does not apply to the Certificates.  Before addressing the substantive merits of U.S. Bank's argument, the Court must first address a procedural objection raised by VNB.  As mentioned earlier, U.S. Bank previously filed a motion to dismiss VNB's complaint, which this Court partially granted.  In that motion, U.S. Bank indicated that it was "preserv[ing] its argument as to why the TIA does not apply to the Trusts until the Court can address the issue…with guidance from the Second Circuit, which is currently considering the issue….*See Retirement Bd. v. The Bank of New York Mellon*, No. 13-661 (2d Cir.) ECF No. 9-1 at 11.  VNB now argues that the Federal Rules of Civil Procedure bar U.S. Bank from raising its argument for the first time in a second motion to dismiss.  Generally, successive motions to dismiss are not permitted under the Federal Rules of Civil Procedure.  *See* Fed.R.Civ.P. 12(g)(2) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").  However, the Federal Rules also provide that a Rule 12(b)(6) defense will not be waived when it is omitted from a  motion in the circumstances described in Rule 12(g)(2).  Fed.R.Civ.P. 12(h)(1)(A).  In light of these rules, courts have generally adopted a flexible approach when confronted with this scenario.  *See, e.g. Walzer v. Muriel Sibert & Co.*, 447 Fed.Appx. 377, 384 (3d Cir. 2011) (allowing successive 12(b)(6) motion was harmless error because the district court treated it no differently than a permissible Rule 12(c) motion); *Brown v. City of Essex Cnty, N.J.*, No. 2:10-03980, 2011 WL 3610268 (D.N.J. Aug. 16, 2011) (allowing successive 12(b)(6) motions after "balancing the possible harm of accepting the motion with the time and expense of litigation if the motion is refused.")

Here, accepting U.S. Bank's motion would promote judicial efficiency while resulting in little to no prejudice against VNB.  First, U.S. Bank does not simply seek a "second bite at the apple" by offering certain arguments in one motion to dismiss, losing, and then raising new arguments in a second motion to dismiss.  Instead, U.S. Bank was upfront in explaining that it was preserving its argument regarding the TIA's reach because another court was considering the issue as a matter of first impression.  Moreover, like the motion in *Walzer*, the substance of U.S. Bank's motion to dismiss would be no different had the motion been filed as a Rule 12(c) motion for judgment on the pleadings.  In assessing U.S. Bank's motion, the Court will accept VNB's allegations as true and will not rely on any documents existing outside the pleadings.  Finally, rejecting the motion now would only result in the Court hearing the same argument later, whether it be in a motion for judgment

on the pleadings or a motion for summary judgment.  The Court will therefore accept U.S. Bank's motion to dismiss.[3]

Turning to the substance of the motion to dismiss, the Court finds that the TIA does not apply to the Certificates.  While the TIA applies to certain instruments in the bond market, the statute provides that it does not apply to all investment instruments.  Of relevance here, Section 304 of the TIA provides that the statute does not apply to "any certificate of interest or participation in two or more securities having substantially different rights and privileges…."  15 U.S.C. § 77ddd.  In *Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon* ("*PABF*"), 775 F.3d 154, 165-170 (2d Cir. 2014), the United States Court of Appeals for the Second Circuit concluded under 15 U.S.C. § 77ddd, the TIA does not apply to RMBS certificates governed by pooling and servicing agreements.  In doing so, the Second Circuit first concluded that the certificates at issue were "certificates of interest or participation" because payments under the certificates were contingent on the cash flows generated by the underlying mortgage loans.  *Id.* at 165-66 (quoting *Tcherepnin v. Knight*, 389 U.S. 332 (1967)).  Second, the court concluded that the case involved certificates of participation in "two or more securities" because each trust held hundreds of thousands of loans, and mortgage loans are "securities" under the TIA.  *Id.* at 169.  Finally, the court concluded that the mortgage loans held by the trusts "had substantially different rights and privileges" because they each had "different obligors, payment terms, maturity dates, interest rights, and collateral."  *Id.* (citing *Okla Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, 291 F.R.D. 47, 58-60 (S.D.N.Y. 2013).

While not binding on this Court, *PABF* is persuasive in its holding that certificates like the ones purchased by VNB are excluded from TIA.  Moreover, the SEC itself has endorsed the position taken by the Second Circuit.  *See PABF*, 775 F.3d at 169 (citing SEC materials indicating that RMBS trusts are exempt from TIA).  Like *PABF*, this case involves certificates of participation that are contingent on cash flows generated by a large group of mortgage loans.  And also like *PABF*, the loans underlying the trusts at issue involve substantially different rights and privileges.

VNB's arguments to the contrary are unavailing.  While VNB may take issue with the fact that the Second Circuit relied on *Tcherepnin* when concluding that the certificates were certificates of participation, it cannot deny that the language of the TIA also contemplates the existence of certificates of participation in notes and loans.  *PABF*, 775 F.3d at 166 ("the TIA itself, in § 304(a)(1), contemplates the existence of certificates of interest or participation in notes and loans, whose cash flows are not generally referred to as 'profits'").  Similarly, VNB's argument that each tranche exists as a single security is without merit.  VNB's position ignores the fact that the term "tranche" is merely used to

---

[3] The Court also rejects VNB's argument that U.S. Bank's motion to dismiss is in fact an untimely motion for reconsideration.  U.S. Bank's motion is not a motion for reconsideration because it does not seek any of the forms of relief contemplated in Local Civil Rule 7.1.

describe a group of certificates, not a single security.  *Id*. at 168 (citing *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F.Supp. 2d 322, 328 (S.D.N.Y. 2012)).  Consequently, the Court finds that the TIA does not apply to the Certificates.  VNB's TIA claim is **DISMISSED WITH PREJUDICE**.

## III.    CONCLUSION

For the foregoing reasons, both motions are **GRANTED**.   An appropriate order accompanies this decision.


                                    _____/s/ William J. Martini_____
                                    **WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 10, 2015**